# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1042

_____

| | | |
|---|---|---|
| Patty Beckley, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Kenneth S. Apfel, Commissioner, | * | |
| Social Security Administration, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: May 11, 1998
Filed: August 27, 1998

_____

Before BEAM and MURPHY, Circuit Judges, and MELLOY,[1] District Judge.

_____

BEAM, Circuit Judge.

Patty Beckley appeals the district court's affirmance of the denial of Social Security benefits. Because the record does not contain substantial evidence to support the findings of the Administrative Law Judge (ALJ), we reverse and remand for further proceedings.

_____

[1]The Honorable Michael J. Melloy, Chief United States District Judge for the Northern District of Iowa.

## I.    BACKGROUND

Patty Beckley, who is forty-six years old, was previously employed as a cashier clerk, prep technician, machine operator, photographer, bus driver, caregiver and printer/setter.  She suffers from chronic back pain and migraine headaches with a history of depression.

In 1994, Beckley applied for benefits, alleging that she has been disabled since January 1994.  Her application was denied both initially and on reconsideration.  She then requested a hearing before an ALJ.

At the hearing, Beckley testified that she injured her back in a fall in 1993.  Since then, she has suffered from "insistent" back pain that "never let[s] up."  The pain radiates down both legs.  She stated that she gets several weeks of relief from epidural shots in her spine and that standing against a wall or sitting in a hot tub gives her some relief.  She also stated that she cannot take her medications every day because they make her feel "like a zombie" and add to her depression.  She stated that she can sit for twenty to thirty minutes. While sitting or shifting her weight she often experiences "searing" pain like she has been "poke[d] with something hot."  She stated that she cannot bend, kneel, stoop, or lift more than five pounds.  She also testified that she has migraine headaches about once or twice a week.  These headaches are totally incapacitating and make her dizzy.  She takes three Fiorinal, a headache medication, every four to six hours to combat the headaches.  The medication makes her "woozy and just silly."  She also stated that she is treated in an emergency room about four times a year with pain relief injections for the headaches.

The medical evidence shows that Beckley has been treated for sacroiliac joint pain and lumbar disc pain.  An MRI showed two mildly bulging discs in her lumbar spine as well as hemangiomas within the vertebral bodies of her lumbar spine.  Since

1994, she has received physical therapy, numerous sacroiliac joint injections, and epidural steroid injections at St. Bernard's Pain Management Center. She has been prescribed numerous medications for pain, inflammation, and depression.

Beckley has been treated for migraine headaches since 1987. At that time her headaches were accompanied by unexplained blackouts. These headaches have been diagnosed as vascular in origin and have been treated with painkillers.

Beckley has also been treated for depression. In 1994, she was diagnosed with major depression and acute grief reaction after the breakup of a relationship. She continues to be treated for depression and is presently taking Prozac with good results.

Beckley's daily activities include going to school, walking, and helping with the housework. She stated that she has returned to college to finish her degree but has missed numerous classes because of illness. Her roommate also testified at the hearing and corroborated Beckley's testimony. There was no vocational expert testimony presented at the hearing.

After the hearing, the ALJ found that Beckley has severe impairments of sacroiliac joint and lumbar disc pain, as well as vascular headaches, but does not have an impairment or combination of impairments that satisfied the listing of presumptively disabling impairments. The ALJ found Beckley's complaints of severe and constant pain were not credible. Although he found Beckley unable to perform her past work, he found she had the residual functional capacity to perform the full range of sedentary work. Referring to the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App. 2, (the grids), and considering her age, education, and work experience, he found Beckley was not disabled. The Appeals Council affirmed the decision, as did the district court.

## II.    DISCUSSION

We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole.  See Matthews v. Bowen, 879 F.2d 422, 423-24 (8th Cir. 1989). Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision.  See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997).  The review we undertake is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision, we also take into account whatever in the record fairly detracts from that decision.  See Cline v. Sullivan, 939 F.2d 560, 564 (8th Cir. 1991).

To establish a disability claim, the claimant bears the initial burden to show that she is unable to perform her past relevant work. See Reed v. Sullivan, 988 F.2d 812, 815 (8th Cir. 1993).  If met, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and with vocational factors such as age, education, and work experience.  See id.

The ALJ found that Beckley met her initial burden, thus the dispositive question is whether the Commissioner met his burden of establishing that Beckley retained the residual functional capacity to perform the full range of sedentary work.  See Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995).  If an applicant's impairments are exertional (affecting the ability to perform physical labor), the Commissioner may carry this burden by referring to the medical-vocational guidelines or "grids," which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment.   See Foreman v. Callahan, 122 F.3d 24, 25 (8th Cir. 1997). Reliance on the grids is "'predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs' and

-4-

therefore 'may not be fully applicable where the nature of an individual's impairment does not result in such limitations,'" namely, mental impairments and pain. Id. (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)). Thus, if a claimant's ability to perform the full range of work in a particular category is limited by a nonexertional impairment, the ALJ cannot rely exclusively on the grids to determine disability but must consider vocational expert testimony. See Frankl, 47 F.3d at 937.

Pain is a nonexertional impairment. See Cline, 939 F.2d at 565. The ALJ discredited Beckley's testimony regarding the extent of her pain and thus relied solely on the grids, instead of expert vocational testimony, to determine whether there were jobs in the national economy that a person with Beckley's residual functional capacity could perform. When assessing the credibility of a claimant's subjective allegations of pain, however, the ALJ must consider the claimant's prior work history; daily activities; duration, frequency and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors. See Cline, 939 F.2d at 564. In this case, the inconsistencies that the ALJ relied on to disbelieve Beckley's testimony are not supported by sufficient evidence.

The ALJ stated, "[t]here is simply no medically verifiable physical abnormality in her head, neck or lumbar spine to account for such pain" and further pointed to Beckley's "lack of more aggressive recent medical treatment," noting that "she has been content to simply refill prescriptions for pain medication and occasionally get a pain block injection." These statements are not supported by the record. Beckley's diagnoses of bulging discs and vascular headaches are objective proof of impairments that could account for her pain. Although a claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimum medical treatment

and/or has taken only occasional pain medications, such is not the case with Beckley. See id. at 568. The record reveals Beckley's many visits to doctors and that she takes numerous prescription medications for pain and inflammation. She has availed herself of many treatment modalities for chronic pain, including a TENS unit, physical therapy, steroid injections, and nerve blocks, and has undergone several diagnostic tests, including CT scans, nerve conduction studies, electromyography, and MRIs. We do not characterize this as a lack of aggressive treatment. The ALJ also failed to consider the dosage, effectiveness, and side effects of Beckley's medications, in spite of her testimony that the medications made her "woozy" and "silly." See Polaski, 739 F.2d at 1322.

Here, the record supports a finding that nonexertional impairments exist: Beckley suffers from pain that cannot be completely discounted and she is being treated for depression. Although neither may be severe enough to be disabling, Beckley is entitled to have a vocational expert testify as to the effect of these impairments on her residual functional capacity. We find the ALJ erred in discounting Beckley's subjective complaints and thus erred in relying solely on the grids to determine whether Beckley had the residual functional capacity to perform the full range of sedentary work.

## III. CONCLUSION

For the reasons stated above, we reverse the district court's grant of summary judgment to the Commissioner. We remand to the district court with instructions to remand to the Social Security Administration for further proceedings at which vocational expert testimony must be adduced.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.