**Richard SCOTT, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. C 98–4098–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

March 30, 2000.

Ruth M. Carter, Carter & Tiefenthaler, P.C., Sioux City, IA, for Plaintiff.

Martha A. Fagg, Asst. U.S. Atty., Sioux City, IA, Frank V. Smith III, Chief Counsel, Region VII, Social Security Administration, for Defendant.

**ORDER REGARDING REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE**

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1067
    A.  Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1067
    B.  The Decisions Under Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1068

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1069
    A.  Review Of A Report And Recommendation . . . . . . . . . . . . . . . . . . . . . . . . . .1069
    B.  Determination Of Residual Functional Capacity . . . . . . . . . . . . . . . . . . . . .1070
        1.  Grounds for the Commissioner's objection . . . . . . . . . . . . . . . . . . . . . . . .1070
        2.  The five-step evaluation process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1071
        3.  The Commissioner's burden at the fifth step . . . . . . . . . . . . . . . . . . . . . . .1072
            a.  Determination of residual functional capacity . . . . . . . . . . . . . . . . . . .1073
            b.  Availability of jobs within the claimant's residual functional
                capacity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1076
        4.  The Commissioner's authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1076
        5.  Was the proper burden imposed upon the Commissioner? . . . . . . . . . . . . .1078

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1079

In the final step of the disability determination process under Title II or Title XVI of the Social Security Act, what is the Commissioner's burden of proof? The Commissioner asserts that a magistrate judge mischaracterized that burden in a report and recommendation in this case, prompting this court's *de novo* review of the question. The Commissioner contends that the magistrate judge's conclusion that, at step five of the disability determination process, the Commissioner bears the burden to establish a claimant's residual functional capacity "with medical evidence" is contrary to administrative regulations and precedent of this circuit. Instead, the Commissioner contends that he bears only the burden to produce vocational evidence that, given a claimant's residual functional capacity, a significant number of jobs exist in the national economy that he or she can perform. Much may turn on the Commissioner's proper burden, because step five of the analysis goes to the ultimate issue of whether or not the claimant is "disabled" within the meaning of the Social Security Act, and hence is or is not entitled to benefits.

### I. INTRODUCTION

#### A. Procedural Background

Plaintiff Richard Scott filed this action on November 23, 1998, seeking judicial review of an administrative denial of Social Security disability benefits. Scott's odyssey began more than two years earlier, on April 30, 1996, when he filed an application for Title II disability insurance (DI) benefits and Title XVI supplemental security income (SSI) benefits, based on claimed disabilities arising from diabetes and related health problems, including foot ulcers. Scott's application for benefits was denied on initial administrative review and upon reconsideration. On September 13, 1997, Scott's application was again denied by an administrative law judge (ALJ) after an administrative hearing. Scott exhausted his administrative appeals of the ALJ's decision on September 25, 1998. The present action for judicial review followed. On September 8, 1999, the undersigned referred this matter to Magistrate Judge Paul A. Zoss for the preparation of a Report and Recommendation on the disposition of Scott's action for judicial review.

This action is now before the court pursuant to Judge Zoss's Report and Recommendation, filed February 17, 2000. In his Report and Recommendation, Judge Zoss recommended that the ALJ's denial of benefits be reversed and this case remanded to the Commissioner for the calculation and award of benefits. On February 24, 2000, the Commissioner timely filed an objection to Judge Zoss's Report and Recommendation. The Commissioner objects to only one portion of the Report and Recommendation. In the Commissioner's words, "Defendant specifically objects to the Magistrate's characterization of the Commissioner's burden of proof at step five of the sequential evaluation process that it was 'the Commissioner's burden to establish a claimant's [residual functional capacity] with medical evidence.'" Defendant's Objection To The Magistrate's Report and Recommendation (Commissioner's Objection), 1.

### B. The Decisions Under Review

The narrow focus of the Commissioner's objection does not require an exhaustive discussion of the facts of the case. Rather, the court will focus here on the portions of the ALJ's decision regarding Scott's "residual functional capacity" at step five of the disability analysis and that part of Judge Zoss's Report and Recommendation recommending reversal of that determination.

In his decision, the ALJ noted that Dr. Ung, one of Scott's treating physicians, had concluded in March 1997 that Scott could lift and carry less than ten pounds, stand less than two hours in an eight-hour workday, sit no longer than three hours in an eight-hour workday, and that he must switch positions after thirty minutes of sitting or fifteen minutes of standing. ALJ's Decision at 5 (App. at 24); *see also* Exhibit 7F (Medical Opinion Re: Ability To Do Work–Related Activities (Physical) by Dr. Ung) (App. at 278–80) & 8F (Physical Functional Capacity Questionnaire by Dr. Ung) (App. at 281–85). However, the ALJ rejected Dr. Ung's assessment for the following reasons:

[I]t must be kept in mind that [Dr. Ung's] assessment considered the claimant's functional capacity just three months following foot surgery. While Dr. Ung's opinion was correct and appropriate for an individual in a post operative state, that opinion did not reflect what the claimant's abilities would be upon recovery or after 12 months. The record indicates that as of May 2, 1997, the claimant was limited to 2 hours of standing, and the claimant testified on July 9, 1997, that he could tolerate 1½ hours of standing. This clearly shows that the claimant has experienced an improvement in his condition since Dr. Ung's statement of opinion.

ALJ's Decision at 9 (App. at 28). Having rejected Dr. Ung's determination, the ALJ made the following determination of Scott's residual functional capacity:

The undersigned finds that despite the claimant's impairments of insulin dependent diabetes mellitus with neuropathy, bilateral diabetic foot ulcers with history of metatarsal head amputations, hypothyroidism, and medically determinable impairments resulting in complaints of pain and numbness in the arms and hands, and back and neck pain, he retains the residual functional capacity to perform basic work activities except for lifting more than 20 pounds or routinely lifting more than 10 pounds, standing more than 15–30 minutes at a time, walking more than 1 or 2 blocks at a time, standing and/or walking more than 2 hours out of an 8 hour period, continuous stooping, or repetitive squatting, climbing or operation of foot controls. In addition, he should not be exposed to excessive heat, humidity or cold, or work at unprotected heights. Although the claimant alleged depression, there is no medical evidence that his ability to perform gainful work activity is impacted by any mental impairment symptoms, and he did not testify as to any limitations which would result from a mental impairment. (See the Psychiatric Re-

view Technique Form appended to this decision.)

ALJ's Decision at 10 (App. at 29); *see also id.* at 12, ¶ 5 (App. at 31). With the residual functional capacity so defined, and after the testimony of a vocational expert who responded to a hypothetical question premised on the residual functional capacity as determined by the ALJ, the ALJ concluded that Scott could perform jobs—not including his past relevant work—that exist in significant numbers in the local and national economies, *id.,* and hence was not disabled within the meaning of the Social Security Act. *Id.* at 11 (App. at 30); *see also id.* at 13, ¶ 10 (App. at 32).

In the challenged part of his Report and Recommendation, Judge Zoss first noted Dr. Ung's conclusions and the ALJ's decision to reject Dr. Ung's findings. Corrected Report and Recommendation at 28. Judge Zoss then quoted the portion of the ALJ's Decision, quoted above, explaining the ALJ's reasons for rejecting Dr. Ung's evaluation. *Id.* (quoting the ALJ's Decision at 9, App. at 28). Judge Zoss concluded as follows:

> The ALJ cited seemingly contradictory statements by the claimant as support for his decision to discredit the claimant's treating physician. *It is the Commissioner's burden to establish a claimant's [residual functional capacity] by medical evidence. Wilcutts v. Apfel,* 143 F.3d 1134, 1137 (8th Cir. 1998). However, making a credibility finding is not equivalent to proving the claimant's residual functional capacity with medical evidence. *Soth v. Shalala,* 827 F.Supp. 1415, 1417 (S.D.Iowa 1993).

Report and Recommendation at 29 (emphasis added). Judge Zoss found that the ALJ's conclusion that Scott was limited to 2 hours of standing was entirely consistent with Dr. Ung's opinion. *Id.* However, Judge Zoss also found that the ALJ's conclusion that Scott could tolerate 1½ hours of standing was a misstatement of Scott's testimony. *Id.* Furthermore, Judge Zoss found that the record called into question the ALJ's conclusion that Dr. Ung's report did not take into account Scott's medical improvement, because Dr. Ung's March 1997 evaluation notes that Scott's impairments could be expected to last at least twelve months. *Id.* at 29–30. Judge Zoss apparently did not find that the ALJ had relied on any other medical evidence to justify his rejection of Dr. Ung's evaluation or to justify the ALJ's own contrary evaluations.

## II. LEGAL ANALYSIS

### A. Review Of A Report And Recommendation

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or·specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied,* 519 U.S. 860, 117 S.Ct. 164, 136 L.Ed.2d 107 (1996); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk* ). Because an objection has been filed in this case, the court must conduct a *de novo* review.

However, the plain language of the statute governing review provides only for *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Therefore, the court concludes that it must make a *de novo* review only of matters raised in the Commissioner's February 24, 2000, objec-

tion. As noted above, the Commissioner objects only to Judge Zoss's characterization of the Commissioner's burden at step five of the disability analysis to be to prove residual functional capacity with medical evidence.

The court has made the *de novo* review required by 28 U.S.C. § 636(b)(1) and Eighth Circuit precedent by examining the record before Judge Zoss in light of the Commissioner's objection to Judge Zoss's Report and Recommendation, with particular regard to the important *legal* question of the Commissioner's burden of proof on the claimant's residual functional capacity. *See, e.g., Swenson v. Management Recruiters Int'l, Inc.*, 872 F.2d 264, 267 (8th Cir.) (identifying as "questions of law," which arbitrators may be ill-equipped to handle, "the proper burden of proof or the appropriate legal standard to apply."), *cert. denied*, 493 U.S. 848, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989); *accord Trull v. Volkswagen of America, Inc.*, 187 F.3d 88, 93 (1st Cir.1999) ("[T]he legal determination of the appropriate burden of proof ... is a question of law[.]"); *In re G.G.M., P.C.*, 165 F.3d 1026, 1030 (5th Cir.1999) ("[B]urden of proof questions are ones of law[.]").

### B. Determination Of Residual Functional Capacity

#### 1. Grounds for the Commissioner's objection

The Commissioner objects to Judge Zoss's statement that "[i]t is the Commissioner's burden to establish a claimant's [residual functional capacity] by medical evidence." The Commissioner contends, "At step five [of the disability analysis], the Commissioner's burden is to produce vocational evidence that, given a claimant's [residual functional capacity], a significant number of jobs exist in the national economy that he or she can perform." Commissioner's Objection at 2. The Commissioner

contends that, to accept Judge Zoss's characterization of the Commissioner's burden of proof at "step five" would violate the Commissioner's policy and regulations, as well as Eighth Circuit precedent, most notably *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir.1984), and *Anderson v. Shalala*, 51 F.3d 777 (8th Cir.1995). The Commissioner contends that *Polaski* mandates consideration of several factors, in addition to medical evidence, and *Anderson* requires the ALJ to determine a claimant's residual functional capacity based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of his or her limitations.

The Commissioner contends that, in citing *Soth v. Shalala*, 827 F.Supp. 1415, 1417 (S.D.Iowa 1993), in support of his statement regarding the Commissioner's burden of proof at "step five," Judge Zoss failed to take note of a split within the Federal District for the Southern District of Iowa. The Commissioner asserts that the Commissioner's burden of proof is properly defined in other decisions from the Southern District, which state that the Commissioner's burden is to produce vocational evidence that, given a claimant's residual functional capacity, a significant number of jobs exist in the national economy that the claimant can perform. *See Shimkus v. Apfel*, 72 F.Supp.2d 1056 (S.D.Iowa 1999); *Dykes v. Apfel*, No. 3–98–CV 80203 (S.D.Iowa 1999); *Howard v. Apfel*, No. 3–99–CV90092 (S.D.Iowa 2000). The Commissioner also cites the unpublished decision [1] of the Sixth Circuit Court of Appeals in *Her v. Apfel*, 202 F.3d 268 (table op.), 1999 WL 1253056 (full text) (6th Cir. Dec. 16, 1999), for the proposition that the ALJ does not redetermine the claimant's residual functional capacity at the fifth step of the analysis, because the

---

1. The Commissioner states that the decision of the Sixth Circuit Court of Appeals in *Her* is "a case set for publication." However, the decision, as printed from the full text version on Westlaw, a copy of which the Commissioner attached to his brief, clearly states that the

*Her* decision is "AN UNPUBLISHED OPINION" that "WILL NOT BE PUBLISHED IN A PRINTED VOLUME." Thus, this decision has little precedential value. *See* 6th Cir.R. 28(g); 6th Cir.I.O.P. 206.

Commissioner must only show that there are other jobs in the national economy for the claimant to perform.

The Commissioner asserts that Judge Zoss's interpretation would mean that the ALJ would be required to set aside the consideration of credibility and residual functional capacity based upon all relevant evidence in the record, and to make a second residual functional capacity finding based solely on "objective medical evidence." Such a process, according to the Commissioner, would require the ALJ to ignore the claimant's own statement about his or her impairments, as well as similar statements by third parties and treating physicians, to the detriment of the claimant, because such evidence may establish disability where medical evidence alone is insufficient. The Commissioner contends that Judge Zoss's requirement is also impractical, because treating or consultative physicians may not always provide the necessary information, even if asked to do so, and apparent inconsistencies in medical evidence or the claimant's own statements would not be ironed out. Therefore, "[t]he Commissioner requests that this court recognize that the Commissioner's burden of proof at step five is to produce vocational evidence that, given a claimant's residual functional capacity, a significant number of jobs exist in the national economy that he or she can perform." Commissioner's Objection at 4.

The court concludes that the Commissioner is mistaken on a number of grounds.

### 2. The five-step evaluation process

In keeping with administrative regulations 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920, the Eighth Circuit Court of Appeals has repeatedly summarized the five-step disability evaluation process as follows:

[The Commissioner] determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly lim-

its the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Kelley v. Callahan,* 133 F.3d 583, 587–88 (8th Cir.1998).

*Cox v. Apfel,* 160 F.3d 1203, 1206 (8th Cir.1998); *accord Bladow v. Apfel,* 205 F.3d 356, 358, n. 5 (8th Cir.2000) (similar summary); *Kerns v. Apfel,* 160 F.3d 464, 466 n. 6 (8th Cir.1998) (same summary, citing *Fines v. Apfel,* 149 F.3d 893, 895 (8th Cir.1998), and 20 C.F.R. § 404.1520); *Baker v. Apfel,* 159 F.3d 1140, 1143–44 (8th Cir.1998) (same summary, citing *Kelley* ); *Fenton v. Apfel,* 149 F.3d 907, 910 (8th Cir.1998); *Kelley v. Callahan,* 133 F.3d 583, 587–88 (8th Cir.1998); *see also Weiler v. Apfel,* 179 F.3d 1107, 1109 (8th Cir.1999) (referring to the five-step process established by 20 C.F.R. § 1404.1520(a)–(f), but not identifying specifically the steps in the process); *and compare Beckley v. Apfel,* 152 F.3d 1056, 1059 (8th Cir.1998) (stating the burden-shifting process in two succinct steps: "To establish a disability claim, the claimant bears the initial burden to show that she is unable to perform her past relevant work.... If met, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the physical residual functional capacity to perform a significant number of jobs in the national economy that are consistent with the claimant's impairments and with vocational factors such as age, education, and work experience.") (citations omitted).

The critical portion of the five-step analysis for the purposes of this case is the

requirement at step five: If the claimant does not have the residual functional capacity to return to his or her past relevant work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Nevland v. Apfel,* 204 F.3d 853, 857 (8th Cir.2000); *Bladow,* 205 F.3d at 359 n. 5; *Cox,* 160 F.3d at 1206; *Kerns,* 160 F.3d at 466; *Beckley,* 152 F.3d at 1059; *Fenton,* 149 F.3d at 910; *Fines,* 149 F.3d at 895.[2]

### 3. The Commissioner's burden at the fifth step

■ Looking in more depth at this fifth step in the analysis, this court notes that the Eighth Circuit Court of Appeals has explained that, "in the last step, the Commissioner has the burden to establish that jobs realistically suited to the claimant's residual functional capabilities are avail-

able in the national economy." *Cox,* 160 F.3d at 1207 (citing *Talbott v. Bowen,* 821 F.2d 511, 514–15 (8th Cir.1987)). More specifically, as the Eighth Circuit Court of Appeals recently explained—in a decision by United States District Judge Robert W. Pratt of the Southern District of Iowa, sitting by designation—the Commissioner bears this burden as to two particular matters:

> In our circuit it is well settled law that once a claimant demonstrates that he or she is unable to do past relevant work, *the burden of proof shifts to the Commissioner to prove, first* that the claimant retains the residual functional capacity to do other kinds of work, and, *second* that other work exists in substantial numbers in the national economy that the claimant is able to do. *McCoy v. Schweiker,* 683 F.2d 1138, 1146–47 (8th Cir.1982) *(en banc);*

2. As noted in the body of this decision, the Eighth Circuit Court of Appeals has most often described the burden as shifting to the Commissioner only at the fifth step of the analysis. However, in *Baker,* the court stated that, "[o]nce the claimant's impairments and physical capabilities are established, the Commissioner's burden is to demonstrate that the claimant can perform his or her past relevant work, or in the alternative, that jobs are available in the national economy, realistically suited to the claimant's residual functional capabilities." *Baker,* 159 F.3d at 1144 (citing *Talbott v. Bowen,* 821 F.2d 511, 514–15 (8th Cir.1987).) This at least suggests that the Commissioner bears the burden of demonstrating that the claimant can perform *any* work, either past relevant work or other jobs that are available in the national economy; *i.e.,* it suggests that the burden shifts to the Commissioner at step four as well as at step five to demonstrate the claimant's ability to work despite impairments.

Similarly, in *Kelley,* the court noted that the ALJ had determined that the claimant *could* return to her former work, because the ALJ concluded that her past relevant work did not require the performance of any activities precluded by her limitations. *Kelley,* 133 F.3d at 588. Thus, the inquiry in *Kelley* never got beyond the fourth step of the disability analysis. The appellate court rejected the ALJ's conclusions, because the ALJ did not adequately detail the inconsistencies on which he relied in disbelieving the claimant's com-

plaints of subjective pain, and because the ALJ improperly discredited the claimant's complaints of pain based on her continued employment for several years in spite of her limitations. *Id.* The court observed,

> The presumption that a claimant is not disabled merely because the claimant had a lenient employer, a high tolerance for pain, or no other means of support would unfairly shift the burden of proof back onto the claimant at a point in the proceedings when the burden rightfully belongs on the Commissioner.

*Kelley,* 133 F.3d at 588. Thus, the court in *Kelley* again placed the burden *on the Commissioner at the fourth step of the analysis* to show that the claimant could perform past relevant work despite her impairments.

Although this court believes it makes sense, after the claimant has proved his or her limitations or impairments, to place the burden on the Commissioner to demonstrate that a claimant can perform past relevant work, at the fourth step of the analysis, just as it makes sense to allocate the same burden to the Commissioner at the fifth step of the analysis to demonstrate that the claimant can perform other jobs with his or her residual functional capacity, the court need not reach that question here, because the ALJ determined in Scott's case that Scott cannot perform past relevant work. *See* ALJ's Decision at 12, ¶ 6 (App. at 31). Thus, the question of burden shifting to the Commissioner arises in this case only at the fifth step of the analysis.

*O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir.1983).

*Nevland*, 204 F.3d at 857 (emphasis added); *accord Weiler*, 179 F.3d at 1110 (analyzing the fifth-step determination in terms of (1) whether there was sufficient medical evidence to support the ALJ's residual functional capacity determination and (2) whether there was sufficient evidence to support the ALJ's conclusion that there were a significant number of jobs in the economy that the claimant could perform with that residual functional capacity); *Fenton*, 149 F.3d at 910 (describing "the Secretary's two-fold burden" at step five to be, first, to prove the claimant has the residual functional capacity to do other kinds of work, and, second, to demonstrate that jobs are available in the national economy that are realistically suited to the claimant's qualifications and capabilities); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir.1998) (finding that, if the claimant cannot return to his or her past relevant work, the burden shifts to the Commissioner prove both residual functional capacity and the existence of other jobs that realistically suit the claimant's residual functional capacity). Because the Commissioner's objection fails to recognize his two-fold burden at step five of the analysis, the court will examine both parts of the Commissioner's burden in more detail.

### a. Determination of residual functional capacity

The "key issue" on the question of whether the Commissioner met his burden at the fifth step of the analysis in this case, as in *Nevland*, is the Commissioner's proof on the first requirement, the claimant's residual functional capacity. *Nevland*, 204 F.3d at 857. In *Nevland*, the court observed, "'This is a medical question.'" *Id.* (quoting then District Judge Richard S. Arnold, now Circuit Judge, in *Ford v. Secretary of Health and Human Servs.*, 662 F.Supp. 954, 955 (W.D.Ark.1987)). Similarly, Judge Zoss noted that "[i]t is the Commissioner's burden to establish a claimant's [residual functional capacity] by medical evidence," citing *Wilcutts v. Apfel*,

143 F.3d 1134, 1137 (8th Cir.1998). Oddly enough, in objecting to Judge Zoss's characterization of the Commissioner's burden, the Commissioner does not examine the decision on which Judge Zoss specifically relied. Thus, the court's analysis of whether Judge Zoss mischaracterized the Commissioner's burden begins with the case upon which Judge Zoss relied.

In *Wilcutts*, the court explained the Commissioner's burden at the fifth step of the analysis as follows:

Both administrative law judges found that Wilcutts is unable to return to his past relevant work. In his decision, the second ALJ recognized that the burden had shifted to the Commissioner. AR at 24. In so doing, the second ALJ cited *Talbott v. Bowen*, 821 F.2d 511 (8th Cir.1987). In *Talbott*, 821 F.2d at 514–15, Judge Lay wrote:

If the ALJ finds that the claimant cannot return to his past relevant work, the burden of proof shifts to the [Commissioner], who then has the duty to establish that the claimant is not disabled within the meaning of the Act. *Lewis v. Heckler*, 808 F.2d 1293, 1297 (8th Cir.1987); *Tucker v. Heckler*, 776 F.2d 793, 795 (8th Cir.1985).

. . . .

In presenting evidence that a claimant is not disabled, the [Commissioner] must prove by medical evidence that the claimant has the residual functional capacity to do other kinds of work and that there are jobs available in the national economy that realistically suit the claimant. *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir.1983).

In *McCoy v. Schweiker*, 683 F.2d 1138, 1147 (8th Cir.1982) (*en banc*), the Court wrote that the most important issue in a disability determination is the issue of residual functional capacity. The residual functional capacity which must be found, wrote the Court, is the ability to do the requisite physical acts day in and day out, in the sometimes competitive

and stressful conditions in which real people work in the real world. *Cf. Thomas v. Sullivan,* 876 F.2d 666, 669 (8th Cir.1989). *Wilcutts,* 143 F.3d at 1137. Thus, Judge Zoss precisely tracked the requirements of precedent of the Eighth Circuit Court of Appeals when he allocated to the Commissioner the burden "to establish a claimant's [residual functional capacity] by medical evidence." Report and Recommendation at 29.

Further insight can be gained from the decision on which the court in *Wilcutts* in turn relied for the "medical evidence" requirement for proof of a claimant's residual functional capacity. In *O'Leary v. Schweiker,* 710 F.2d 1334, 1338 (8th Cir. 1983), the court explained,

> The Secretary's burden [at the fifth step of the analysis] is twofold. He or she must first prove that the claimant retains the capacity to do other kinds of work, a burden which includes "the duty to establish by medical evidence that the claimant has the requisite [residual functional capacity]." *McCoy v. Schweiker, supra,* 683 F.2d at 1147. The claimant's [residual functional capacity] is the claimant's physical capacity to do work which is defined in the Secretary's regulations as sedentary, light, medium, heavy, or very heavy. *If there is evidence that the claimant is also suffering from a nonexertional limitation, such as a mental, sensory or skin impairment, an environmental restriction, or pain, the Secretary's burden includes showing that these impairments do not preclude the claimant from performing other work.*

*O'Leary,* 710 F.2d at 1338 (emphasis added). Thus, contrary to the Commissioner's contention here, the requirement that the Commissioner prove residual functional capacity with "medical evidence" in no way leaves the claimant's complaints of pain out of the analysis. Rather, the Commissioner must *also* demonstrate that nonexertional impairments, such as pain, do not preclude the claimant from performing other work. *Id.*

A similar process for the Commissioner to meet its burden to prove that the claimant retains the residual functional capacity to perform other work was outlined in *Beckley v. Apfel,* 152 F.3d 1056 (8th Cir. 1998):

> If an applicant's impairments are exertional (affecting the ability to perform physical labor), the Commissioner may carry this burden by referring to the medical-vocational guidelines or "grids," which are fact-based generalizations about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment. *See Foreman v. Callahan,* 122 F.3d 24, 25 (8th Cir.1997). Reliance on the grids is " 'predicated on an individual's having an impairment which manifests itself by limitations in meeting the strength requirements of jobs' and therefore 'may not be fully applicable where the nature of an individual's impairment does not result in such limitations,' " namely, mental impairments and pain. *Id.* (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)). Thus, if a claimant's ability to perform the full range of work in a particular category is limited by a nonexertional impairment, the ALJ cannot rely exclusively on the grids to determine disability but must consider vocational expert testimony. *See Frankl,* 47 F.3d at 937.

Pain is a nonexertional impairment. *See Cline,* 939 F.2d at 565. The ALJ discredited Beckley's testimony regarding the extent of her pain and thus relied solely on the grids, instead of expert vocational testimony, to determine whether there were jobs in the national economy that a person with Beckley's residual functional capacity could perform. When assessing the credibility of a claimant's subjective allegations of pain, however, the ALJ must consider the claimant's prior work history; daily activities; duration, frequency and intensity of pain; dosage, effectiveness and side effects of medication; pre-

cipitating and aggravating factors; and functional restrictions. *See Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's complaints of pain, the ALJ must make an express credibility determination, detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the *Polaski* factors. *See Cline,* 939 F.2d at 564.

*Beckley,* 152 F.3d at 1059–60. Thus, the Commissioner's burden to prove residual functional capacity to perform other jobs in the national economy in cases involving non-exertional limitations, such as pain, requires proof that claimant's subjective pain complaints should be discredited under the *Polaski* factors.

The descriptions in the *Wilcutts, O'Leary,* and *Beckley* decisions of the burden upon the Commissioner to prove residual functional capacity are not anomalies. In *Weiler v. Apfel,* 179 F.3d 1107 (8th Cir.1999), the ALJ had determined at the fifth step of the disability analysis that the claimant had a residual functional capacity that allowed him to perform other work in the national economy in view of his age, education, and experience. *Weiler,* 179 F.3d at 1109. The claimant contended that "it is the Secretary's burden to establish by medical evidence that the claimant has the requisite residual functional capacity to perform other work," citing *Frankl v. Shalala,* 47 F.3d 935, 937 (8th Cir.1995), and the court "d[id] not quarrel" with this assertion, concluding instead that the record contained substantial medical evidence supporting the residual functional capacity. *See Weiler,* 179 F.3d at 1109. The court reviewed the medical evidence pertinent to the claimant's residual functional capacity, and noted that "[t]he ALJ also followed the proper analysis in discounting Weiler's complaints of pain." *Id.* at 1110 (citing *Anderson v. Shalala,* 51 F.3d 777, 780 (8th Cir.1995)). The court concluded that "[t]he ALJ had before him rather consistent medical evidence regarding Weiler's carpal tunnel problems (except for the properly discounted complaints of pain) and conflicting medical evidence regarding Weiler's psychological problems," and for that reason concluded that substantial evidence supported the ALJ's residual functional capacity finding. *Id.* Thus, *Weiler* again answers the Commissioner's objection that requiring proof of residual functional capacity by medical evidence somehow disregards the importance of subjective complaints of pain to the determination of residual functional capacity: The court considered the sufficiency of medical evidence in support of the residual functional capacity determination in part in terms of whether complaints of pain had been properly discounted.

Numerous other decisions of the Eighth Circuit Court of Appeals are in accord with the requirement that the Commissioner meet his burden to prove the claimant's residual functional capacity with medical evidence, and, where pain is asserted as a non-exertional impairment, the Commissioner must also prove that complaints of pain can be discredited, pursuant to *Polaski,* so that they do not preclude other jobs. *See Fenton v. Apfel,* 149 F.3d 907, 910 (8th Cir.1998) (describing the first part of the Commissioner's "two-fold burden" at step five of the disability analysis to be "to prove by medical evidence that the claimant has the requisite residual functional capacity (RFC), the claimant's physical capacity, to do other kinds of work."); *Ostronski v. Chater,* 94 F.3d 413, 418 (8th Cir.1996) ("the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting," and must consider the claimant's complaints of pain under the *Polaski* standards in doing so); *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir.1995) ("It was the ALJ's responsibility to determine Anderson's [residual functional capacity] based on all the relevant evidence, including medical records, observations of treating physicians and others, and Anderson's own descriptions of her limitations," but observing that, "[i]f there is no [medical] evidence of the claimant's residual functional capacity, the

ALJ's decision 'cannot be said to be supported by substantial evidence' ") (quoting *Frankl, infra* ); *Frankl v. Shalala,* 47 F.3d 935, 937 (8th Cir.1995) ("The Secretary's 'burden includes the duty to establish by medical evidence that the claimant has the requisite [residual functional capacity]' to perform other work.") (quoting *McCoy,* 683 F.2d at 1147).

■ As a final point on this portion of the Commissioner's burden, the requirement that the Commissioner prove the claimant's residual functional capacity by medical evidence does not mean that the Commissioner must produce additional evidence not already within the record. *Anderson,* 51 F.3d at 779. Rather, the question is whether medical evidence already in the record provides a sufficient basis for a decision in favor of the Commissioner. *Id.*

### b. Availability of jobs within the claimant's residual functional capacity

■ As to the second part of the Commissioner's burden at the fifth step of the disability analysis, whether jobs exist in the national economy within the claimant's residual functional capacity, the Eighth Circuit Court of Appeals has explained as follows:

> In determining availability of such jobs, the claimant's impairments, together with her age, education, and previous work experience, must be considered. *See Fenton v. Apfel,* 149 F.3d 907, 910 (8th Cir.1998). The Commissioner may produce evidence of suitable jobs by eliciting testimony from a vocational expert concerning availability of jobs which a person with the claimant's particular residual functional capacity can perform. *See id.* This is generally accomplished by posing hypothetical questions to a vocational expert. The questions must fairly reflect the abilities and impairments of the claimant as evidenced in the record. *See Morse v. Shalala,* 32 F.3d 1228, 1230 (8th Cir.1994).

*Cox,* 160 F.3d at 1207; *Baker,* 159 F.3d at 1144. Thus, the testimony of a vocational expert is not relevant to a determination of the claimant's residual functional capacity, the first part of the Commissioner's burden at step five of the disability analysis; rather, the testimony of a vocational expert is relevant to the question of whether jobs within the claimant's residual functional capacity exist within the national economy, the second part of the Commissioner's burden at this step in the analysis. Furthermore, the Eighth Circuit Court of Appeals has explained that it is at part two of the fifth-step analysis, the showing of available jobs in the national economy, that the "claimant's exertional and nonexertional impairments, together with his age, education, and previous work experience, must be considered." *Fenton,* 149 F.3d at 910; *see also Cox,* 160 F.3d at 1207 (citing *Fenton* ); *Baker,* 159 F.3d at 1144 (same). Thus, the Commissioner's ultimate burden at the fifth step of the disability analysis may be carried on the basis of all of the evidence the Commissioner incorrectly contends is left out of the analysis by Judge Zoss's characterization of the Commissioner's burden on the claimant's residual functional capacity.

### 4. The Commissioner's authorities

The decisions from the Southern District of Iowa upon which the Commissioner relies, *Shimkus v. Apfel,* 72 F.Supp.2d 1056 (S.D.Iowa 1999); *Dykes v. Apfel,* No. 3–98–CV 80203 (S.D.Iowa 1999); *Howard v. Apfel,* No. 3–99–CV 90092 (S.D.Iowa 2000), do not require a different conclusion. In *Shimkus,* the court noted that the ALJ had determined that the plaintiff's exertional and non-exertional impairments did not prevent him from performing a significant number of jobs in the national economy. *Shimkus,* 72 F.Supp.2d at 1058. The court then addressed, *inter alia,* the plaintiff's contention that the ALJ had "failed to prove by medical evidence that plaintiff has the [residual functional capacity] to perform the jobs cited by the vocational expert." *Id.* at 1059. The court relied on

*Anderson,* 51 F.3d at 779, for the proposition that "[t]he need for medical evidence . . . does not require the Secretary to produce additional evidence not already within the record. '[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.' " *Id.* (quoting *Anderson,* 51 F.3d at 779). The court then reviewed the medical evidence supporting the ALJ's determination of the claimant's residual functional capacity. *Id.* at 1059–60. The court concluded that "the medical evidence in the record provided 'a sufficient basis for the ALJ's decision,' that plaintiff was not disabled during the period of time covered by his present application." *Id.* at 1060 (again citing *Anderson* ). However, nowhere in the *Shimkus* opinion did the court state or rely upon a statement of the Commissioner's burden, as asserted by the Commissioner in this case, to be only to produce vocational evidence that, given a claimant's residual functional capacity, a significant number of jobs exist in the national economy that the claimant can perform. Instead, the court addressed only the first part of the Commissioner's burden at step five of the analysis. The adequacy of the ALJ's determination on the second part of the Commissioner's burden, that jobs were available within the claimant's residual functional capacity, did not appear to be at issue in *Shimkus.* In short, *Shimkus* specifically applies the same burden used by Judge Zoss and that burden is consistent with Eighth Circuit precedent, as demonstrated above. Also, the decision in *Shimkus* relies on *Anderson,* 51 F.3d at 779, for the same proposition this court has relied on *Anderson:* Although the Commissioner must prove the claimant's residual functional capacity by medical evidence, the Commissioner does *not* need to introduce additional medical evidence to meet that burden. *See Shimkus,* 72 F.Supp.2d at 1059 (citing *Anderson,* 51 F.3d at 779).

Nor do the unpublished Southern District decisions cited by the Commissioner require a different result. The pertinent part of the decision in *Dykes v. Apfel,* No. 3–98–CV 80203 (S.D.Iowa 1999), is the following:

Plaintiff also contends the ALJ did not correctly shift the burden of proof once plaintiff showed an inability to do past work. *Plaintiff contends the ALJ had the burden to prove by objective medical evidence that she has the residual functional capacity to work. Defendant contends its only burden is to show a significant number of jobs exist in the national economy that plaintiff can perform. The government's position is correct.* The court considers the objective medical evidence, as well as other factors, in its *Polaski* analysis. 20 C.F.R. §§ 404.1529 and 416.929, *Polaski,* 739 F.2d at 1322. The government was not obliged to produce additional medical evidence. *See Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir.1995). On this issue, the court agrees with the analysis in *Shimkus v. Apfel,* No. 3–98–CV–10155 (S.D.Iowa July 28, 1999) and not the earlier ruling in *Davis v. Callahan,* 4–96–CV–90706 [985 F.Supp. 913] (S.D.Iowa, Sept. 18, 1997), cited by plaintiff.

*Dykes,* slip op. at 3 (italics added, underlining in the original). This court must note that the conclusion in *Dykes* that the Commissioner's only burden at the fifth step of the disability analysis is to show a significant number of jobs exist in the national economy that the claimant can perform, and *not* to prove the claimant's residual functional capacity by medical evidence, is simply out of step with precedent of the Eighth Circuit Court of Appeals, as demonstrated above. This court must respectfully suggest that the court in *Dykes,* like the Commissioner here, has misread the conclusion in *Anderson* —that the Commissioner need not produce *additional* medical evidence—to be a rejection of any burden on the Commissioner to prove the claimant's residual functional capacity by medical evidence. However, *Anderson* clearly reiterates the Commissioner's burden to prove the claimant's residual func-

tional capacity by medical evidence. *Anderson*, 51 F.3d at 779 ("We must determine whether the record presents medical evidence of Anderson's [residual functional capacity] at the time of the hearing. *Frankl v. Shalala*, 47 F.3d 935, 937–38 (8th Cir.1995). If there is no such evidence, the ALJ's decision 'cannot be said to be supported by substantial evidence.' *Id.*"). The court in *Anderson* explained only that "[t]he need for medical evidence, however, does not require the Secretary to produce additional evidence not already within the record." *Id.* Likewise, this court suggests that the same mistake made in *Dykes* is repeated in *Howard v. Apfel*, No. 3–99–CV90092 (S.D.Iowa 2000), the last of the Southern District cases upon which the Commissioner relies. *See Howard*, slip op. at 1.[3]

### 5. Was the proper burden imposed upon the Commissioner?

In asserting in this case that the Commissioner's burden at the fifth step of the analysis was only to produce vocational evidence that, given a claimant's residual functional capacity, a significant number of jobs exist in the national economy that the claimant can perform, the Commissioner disregarded the first part of his burden, the part pertaining to proof that the claimant retains the residual functional capacity to do other kinds of work. The Commissioner leaped instead to the second part of the burden, proof from vocational evidence that there are jobs in the national economy that fit the claimant's residual functional capacity. *See, e.g., Nevland*, 204 F.3d at 857. To put it another way, the court concludes that the Commissioner's principal mistake was taking Judge Zoss's correct

statement of one part of the Commissioner's burden at step five of the disability analysis—the first part—to be an incorrect statement of the entire burden upon the Commissioner at this step in the analysis. That is precisely the same sort of mistake the Commissioner actually makes in his formulation of the burden, although the Commissioner's formulation correctly states only the second part of his burden.

Furthermore, allocation to the Commissioner of a burden to prove the claimant's residual functional capacity by medical evidence does not, as the Commissioner contends, require the ALJ to ignore the claimant's own statement about his or her impairments, as well as similar statements by third parties and treating physicians, to the detriment of the claimant, because such evidence may establish disability despite the insufficiency of medical evidence alone. The Commissioner seems to have misunderstood that he has *a burden to prove something* at the fifth step of the analysis—the burden *to prove* by medical evidence that the claimant has the residual functional capacity to perform other jobs available in the national economy—which differs from the ALJ's obligation to consider all of the evidence in making a final determination of disability. *See Anderson*, 51 F.3d at 779 ("It was the ALJ's responsibility to determine Anderson's [residual functional capacity] based on all the relevant evidence, including medical records, observations of treating physicians and others, and Anderson's own descriptions of her limitations," but observing that, "[i]f there is no [medical] evidence of the claimant's residual functional capacity, the ALJ's decision 'cannot be said to be sup-

---

**3.** The pertinent part of the *Howard* decision appears to be lifted nearly verbatim from the decision in *Dykes*:

Plaintiff contends the ALJ did not correctly shift the burden of proof once plaintiff showed an inability to do past work. *Plaintiff contends the ALJ had the burden to prove by objective medical evidence that she has the residual functional capacity to work. Defendant contends its only burden is to show a significant number of jobs exist in*

*the national economy that plaintiff can perform. The government's position is correct.* The court considers the objective medical evidence, as well as other factors, in its *Polaski* analysis. 20 C.F.R. §§ 404.1529 and 416.929, *Polaski*, 739 F.2d at 1322. The government was not obliged to produce additional medical evidence. *See Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir.1995). *Howard*, slip op. at 1 (italics added, underlining in the original).

ported by substantial evidence' ") (quoting *Frankl, infra*); *Frankl,* 47 F.3d at 937 ("The Secretary's 'burden includes the duty to establish by medical evidence that the claimant has the requisite [residual functional capacity]' to perform other work.") (quoting *McCoy,* 683 F.2d at 1147). At the fifth step, the Commissioner is *not* attempting to prove disability, but to prove that the claimant's residual functional capacity, as established by medical evidence, does not preclude the claimant from working.

Judge Zoss, however, correctly stated the Commissioner's burden at step five of the analysis, not only as to the first part, the Commissioner's burden to prove residual functional capacity with medical evidence, *see* Report and Recommendation at 29, but as to the second part, the Commissioner's burden to prove that jobs within the claimant's residual functional capacity exist in the national economy. *See id.* at 31. Furthermore, Judge Zoss did not improperly disregard other evidence pertinent to Scott's residual functional capacity, such as the observations of treating physicians and others, or the claimant's subjective complaints. Indeed, Judge Zoss specifically considered whether the ALJ erred in his analysis, under *Polaski,* of Scott's subjective pain complaints. *See* Report and Recommendation at 31–33. Judge Zoss found that the ALJ's *Polaski* analysis was not supported by substantial evidence. *Id.* at 33. Judge Zoss applied the correct burdens and undertook the correct analysis in reaching his conclusion that the ALJ's decision should be reversed.

### III. CONCLUSION

The Commissioner has misread Eighth Circuit precedent as excluding from the Commissioner's burden, at the fifth step of the disability analysis, the burden to prove the claimant's residual functional capacity by medical evidence. This court finds, however, that Eighth Circuit precedent clearly establishes that the Commissioner's burden at the fifth step of the disability analysis is "two-fold": Once a claimant demonstrates that he or she is unable to

do past relevant work, the burden of proof shifts to the Commissioner to prove, *first,* by medical evidence, that the claimant retains the residual functional capacity to do other kinds of work, and, *second,* that other jobs exist in substantial numbers in the national economy that the claimant is able to do. Furthermore, the undersigned finds no error in Judge Zoss's statement of the Commissioner's burden of proof at step five of the disability analysis, nor in his application of that burden of proof to the record in this case.

THEREFORE, upon *de novo* review of those portions of the report or specified proposed findings or recommendations to which objection is made, *see* 28 U.S.C. § 636(b)(1), the court concludes that the Commissioner's objection must be **overruled.** Judge Zoss's February 17, 2000, Corrected Report and Recommendation is **accepted.** The ALJ's denial of benefits is **reversed** and this case is **remanded** to the Commissioner for the calculation and award of benefits.

**IT IS SO ORDERED.**