# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

---

No. 98-1277

---

Kenneth Smith,      *
    *
       Appellant,     *
    *    Appeal from the United States
      v.     *    District Court for the
    *    Eastern District of Arkansas.
Kenneth S. Apfel, Commissioner,     *
Social Security Administration,     *
    *
       Appellee.     *

---

Submitted:  September 21, 1998

Filed:  September 28, 1998

---

Before MCMILLIAN, HEANEY, and FAGG, Circuit Judges.

---

HEANEY, Circuit Judge.

Kenneth A. Smith, a 40-year-old male with a tenth-grade education, sought review of a final decision of the Social Security Administration denying his applications for social security disability benefits.  The United States District Court for the Eastern District of Arkansas granted summary judgment in favor of the Commissioner and Smith appeals.  Because Smith is entitled to benefits from December 15, 1992 to at least  November 15, 1994, we reverse and remand to the district court with directions

to remand to the Commissioner for a determination of whether Smith is entitled to disability benefits beyond November 15, 1994, and if so, for how long.

### I.  The Period December 15, 1992 to November 15, 1994

Everyone agrees that Smith worked as either a farm laborer or factory worker most of his life and that he can no longer perform this work.  Smith injured his back in the fall of 1990, but continued to work until he underwent surgery on December 15, 1992 to correct a herniated nucleus pulposus at L4-5 and L5-S1.  Smith returned to work on February 13, 1993, but had to quit after about nine weeks because of back pain.  Thereafter, he underwent additional back surgeries on January 18, 1994 and July 25, 1994.  His treating surgeon anticipated that he should be able to return to work on November 15, 1994.  The administrative law judge (ALJ) determined that Smith was not entitled to disability benefits for the 1992-1994 period because he had returned to work for the nine-week period previously identified.  The Commissioner and the district court ultimately approved the decision.  We hold that it was error to do so.

20 C.F.R. § 404.1574(a)(1) provides that in determining whether an individual is able to engage in substantial gainful activity, the agency will generally consider work that a claimant is "forced to stop after a short time because of [an] impairment as an unsuccessful work attempt and . . . earnings from that work will not show that [claimant is] able to do substantial gainful activity."  In Andler v. Chater, 100 F.3d 1389, 1392 (8th Cir. 1996), we held that a "work effort that lasts less than three months can be considered an unsuccessful work attempt when a claimant is unable to perform work for more than a short time, and must quit due to an impairment."  See also King v. Chater, 72 F.3d 85, 86 (8th Cir. 1995); Sample v. Shalala, 999 F.2d 1138, 1142 (7th Cir. 1993).

Here, it seems very clear that Smith was not able to continue his work because of his back condition.  This is demonstrated not only by his own testimony, but by the

2

medical evidence in the record and the fact that he required a second and third surgery after his unsuccessful work attempt. Therefore, we conclude that Smith is entitled to disability benefits for the stated period.

## II. The Period after November 15, 1994

The question of whether Smith is entitled to disability benefits after November 15, 1994 is more difficult and, in our view, can only be answered after the record is completed. A few things are clear. Smith cannot return to his past heavy work. Thus, the ALJ correctly determined that the burden rests on the Commissioner to determine whether there is sedentary work in the national economy that Smith can perform. See Douglas v. Schweiker, 734 F.2d 399, 400 (8th Cir. 1984); McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc). As we have repeatedly stated, the Commissioner must prove by substantial evidence that Smith can perform any work on a sustained basis "in the sometimes competitive and stressful conditions in which people work in the real world." McCoy, 683 F.2d at 1147. What is not so clear is whether Smith can, in fact, perform sedentary work on this basis.

Smith's treating physician reported on August 1, 1994 that Smith should not engage in any strenuous activities and should avoid any job that requires excessive lifting, repetitive lifting, bending, or straining.[1] Of course, a sedentary[2] job by

---

[1]We have repeatedly held that "[t]he opinion of a treating physician is entitled to great weight 'unless it is unsupported by medically acceptable clinical or diagnostic data.'" Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991) (quoting Kirby v. Sullivan, 923 F.2d 1323, 1328 (8th Cir. 1991)); see also Fleshman v. Sullivan, 933 F.2d 674, 676 (8th Cir. 1991).

[2]"Sedentary Work" is defined as:

Exerting up to 10 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or a negligible amount of force

3

definition does not require excessive lifting, but it may require repetitive lifting, bending, or straining.

Smith's treating physician provided another report on October 26, 1994, in which he stated, "I do not feel it reasonable for this patient to try to engage in work activities as he has had so many problems with his back over the past couple of years." Admin. Rec. at 202, 203. Finally, on January 30, 1996, the treating surgeon reported:

> I talked at length with the patient and his wife and reviewed the various options. If you wish for me to try to help him get better, he would need a new work up which would include spine films with flexion and extension views and one also would need to consider a bone scan and MRI or CT of the lumbar spine with and without IV contrast. I feel that this patient also would ultimately need a lumbar myelogram and EMG/NCV of the lower extremities.

Admin. Rec. at 207.

On remand, the treating surgeon should be given an opportunity to clarify and expand on his reports and should be authorized by the Commissioner to undertake the diagnostic procedures suggested in his January 30, 1996 report.[3] Additionally, a

---

frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) to lift, carry, push, pull, or otherwise move objects, including the human body. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

2 Dictionary of Occupational Titles 1013 (rev. 4th ed. 1991).

[3]In this case, as noted above, the burden is on the Commissioner to establish that Smith is able to do sedentary work. Thus, if the Commissioner believes that further treatment would make it possible for Smith to do so, then the Commissioner should

vocational expert should be called to give testimony as to whether there are sedentary jobs in the national economy that Smith can perform in light of the medical limitations more completely described by the treating surgeon. We also suggest that Smith agree to the procedures recommended by his surgeon. Only by having a completed record can the Commissioner, and ultimately this court, determine whether Smith, a relatively young man, can perform sedentary work or the extent to which his disability for all work continued after November 15, 1994 and may be permanent.

### III. Conclusion

For the foregoing reasons, we reverse the district court and remand for further action consistent with this opinion.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

authorize the procedures to be undertaken. 20 C.F.R. § 404.1519m provides as follows:

> However, we will not order diagnostic tests or procedures that involve significant risk to you, such as myelograms, arteriograms, or cardiac catheterizations for the evaluation of disability under the Social Security program. Also, a State agency medical consultant must approve the ordering of any diagnostic test or procedure when there is a chance it may involve significant risk.

Id. We note that one of the diagnostic tests suggested by the physician is a lumbar myelogram. Smith would have to give his consent to this procedure before he can be required to submit to it.