# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3735

_____

Francine C. Shaw,        *
       *
        Appellant,        *
       *    Appeal from the United States
    v.             *    District Court for the
       *    Southern District of Iowa.
Kenneth S. Apfel, Commissioner of    *
Social Security Administration,      *
       *
        Appellee.         *

_____

Submitted: May 10, 2000

Filed: July 19, 2000

_____

Before RICHARD S. ARNOLD and HEANEY, Circuit Judges, and SIPPEL,[1] District
     Judge.

_____

HEANEY, Circuit Judge.

      The sole issue in this social security disability case is whether claimant Francine Shaw was able to perform light or sedentary work from March 17, 1994, through March 29, 1996, the day before she was awarded benefits based on a subsequent

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation.

application.[2]  The Commissioner, relying on a decision of an administrative law judge (ALJ), found that Shaw was able to perform such work.  The district court, on review of the administrative decision, agreed with the Commissioner and denied benefits for that period.  We reverse and remand with instructions to order the Commissioner to award disability benefits.

Shaw, a widow with three daughters, was born on January 19, 1949.  After completing high school and earning a B.A. degree in sociology, she was employed as a claim clerk, children's institution attendant, telephone solicitor, and salesperson-demonstrator.

Shaw suffers from partial complex seizure disorder, obesity, and dysthymia, and tested in the low average range of intellectual functioning.  Shaw suffered nine seizures, one in March, May, and August 1994; two in October 1994; and four in January 1995.  During this time period, she took various anti-seizure medications and experienced dizziness, grogginess, and difficulty walking.

The ALJ found that Shaw could not perform her past relevant work and that she had acquired no work skills that were transferrable to the skilled or semi-skilled work functions of other jobs.  He went on to find, however, that there were other sedentary or light jobs in significant numbers in the national economy that Shaw could perform.  In so finding, he recognized that the burden shifted to the Commissioner to prove with substantial evidence that Shaw had the residual functional capacity to do other kinds of work and that her residual functional capacity, age, and other factors enable her to do some job that exists in the national economy.  See McCoy v. Schweiker, 683 F.2d 1138 (8th Cir. 1982) (en banc).

---

[2]In this proceeding, Shaw was found disabled because she met the Commissioner's listing for epilepsy in 20 C.F.R. § 11.02, Part 404, Appendix 1, Subpart P.

The issue is thus whether there is substantial evidence in the record as a whole to support the ALJ's findings that Shaw could perform "the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." Id. at 1147.[3] We do not believe there is. The ALJ's findings are based in large measure on the opinions of two physicians and the testimony of a vocational expert.

Dr. Stephen P. Singley, to whom Shaw had been referred by the ALJ, reported:

In terms of current ability to remember and understand instructions and procedures and so on, it is my opinion that Mrs. Shaw would not have unusual difficulty with such processes. Ability to maintain attention and concentration and a competitive work pace might, however, be difficult, considering the medication schedule and so on.

(R. at 219 (emphasis added).) Dr. D.V. Domingo performed a psychiatric evaluation at the request of the ALJ. He reported:

On the basis of her mental status, I would consider her to be able to function in different work situations and able to do work-related activities fairly well. However, she is on medication, feels drowsy constantly and with complex partial seizures that have been unpredictable, they could affect her job performance. On the basis of mental status alone, she should be able to hold a job in our competitive economy.

---

[3]Social Security Ruling (SSR) 96-8p, states:

In assessing RFC [residual functional capacity], the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) . . . .

SSR 96-8p, 1996 WL 374184, at *7 (Social Security Administration, July 2, 1996).

-3-

(Id. at 233 (emphasis added).)

Vocational expert Robert Marquart testified that Shaw would not be able to do her past relevant work, that she had no transferrable skills, and that she could only do simple, unskilled positions of a light and sedentary nature, examples of which were production line assembler, document preparer and assembler. However, in a colloquy with Shaw's counsel, Marquart testified as follows:

Q If we have an inability to have standard visual-motor coordination and an inability to meet assembly production standards, with that being the only hypothetical restriction, how, how would that impact on your answers?

A It would obviously . . . eliminate the assembly position from the light category as well as the assembly position from the sedentary category. The – and really, the document preparer, I feel would also be eliminated. We're looking at work that's done at a regular pace, rather than fast, slow, fast, slow. We're, we're looking at something this has to be more or less steady work, and I think that coincides with assembly type duties.

. . . .

Q Also, if we have the ability to function in this area as seriously limited, but not precluded, in dealing with the public and work stresses, maintain attention, concentration, if those were the limitations, how would that impact your answers?

A It would be a negative impact on my responses. Competitive employment, even of an unskilled nature, in my opinion, would not be realistic.

Q And then if we stated that the ability to function in this area is seriously limited, but not precluded, in behavioring [sic] in an emotionally

-4-

stable manner, relating predictably in social situations, and demonstrating reliability, how would that impact?

A  My response would be the same.  Competitive employment couldn't be performed.

(Id. at 338-40 (emphasis added).)

After carefully reviewing the record, particularly the medical reports of Dr. Singley and Dr. Domingo (both of whom the ALJ selected) and the testimony of the vocational expert, we are unable to conclude that substantial evidence in the record as a whole supports the ALJ's conclusion that Shaw was capable of performing light or sedentary jobs such as product line assembler, document preparer, or optical assembler.

Marquart's opinion that Shaw could engage in light, sedentary work is undermined by the testimony of both Dr. Singley and Dr. Domingo.  Dr. Singley observed that Shaw might have difficulty maintaining attention, concentration, and a competitive work pace considering her medication schedule and so on.  Likewise, Dr. Domingo observed that Shaw's job performance could be affected because she takes medication, feels drowsy constantly, and suffers partial, unpredictable seizures-- hardly a finding that Shaw could perform the light or sedentary jobs on a full-time basis.  It seems fairly clear, then, that it would be--in Marquart's words--"unrealistic" to expect Shaw to succeed in the workplace.  The doctor's additional observation that on "the basis of mental status alone, she should be able to hold a job in our competitive economy" does not strengthen the Commissioner's position because mental status alone is not at issue.

The ALJ's finding that "[b]oth [Dr. Domingo and Dr. Singley] believed that [Shaw] would be able to work and to be competitively employed" (R. at 314) is simply

unsupported by the record as a whole. Rather, both expressed doubts as to her employability because of her unpredictable seizures, which were increasing in frequency, and the side effects of her medication.

This matter is remanded to the district court with directions to remand to the Commissioner with instructions to award disability benefits for the period March 17, 1994 through March 29, 1996.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.