Arlan E. MCPHERSON, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

Stephen C. Flugum, Plaintiff,

v.

Kenneth S. Apfel, Commissioner of Social Security, Defendant.

Terry L. Hall, Plaintiff,

v.

Kenneth S. Apfel, Commissioner of Social Security, Defendant.

Leica Nolte, n/k/a Leica Castellaw, Plaintiff,

v.

Kenneth S. Apfel, Commissioner of Social Security, Defendant.

Robyn L. Hughes, Plaintiff,

v.

Kenneth S. Apfel, Commissioner of Social Security, Defendant.

Nos. C99–3049–MWB, C99–3056–MWB, C99–3057–MWB, C99–3058–MWB, C99–4059–MWB.

United States District Court, N.D. Iowa, Central Division.

Aug. 31, 2000.

Ronald J. Wagenaar, Legal Services Corp. of Iowa, Mason City, IA, for Arlan E. McPherson and Stephen C. Flugum.

Danny C. Wilmouth, Legal Services Corp. of Des Moines, IA, Thomas A. Krause, Schott & Associates, Des Moines, IA, for Terry L. Hall.

Blake Parker, Blake Parker Law Office, Fort Dodge, IA, for Leica Nolte.

David A. Scott, Cornawall, Avery, Bjornstad & Scott, Spencer, IA, for Robyn L. Hughes.

Martha A. Fagg, Asst. U.S. Atty., Sioux City, IA, Lawrence D. Kudej, Asst. U.S. Atty., Cedar Rapids, IA, for Apfel.

## MEMORANDUM OPINION AND ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ................................................... 1164
 A. Background To The Five Cases ........................................ 1164
 B. The Commissioner's Objections ....................................... 1166

II. LEGAL ANALYSIS ................................................ 1167
 A. Review Of A Report And Recommendation ............................. 1167
 B. The Commissioner's Burden At Step Five ............................. 1168
 1. Burden of "proof" or "production"? ............................ 1168
 2. Nature of the burden ......................................... 1169
 a. The Commissioner's failure to acknowledge controlling
 authority ............................................... 1170
 b. The controlling authority ............................... 1172
 3. Is the statement of the Commissioner's burden in Nevland
 "misleading" and "confusing"? ................................ 1173
 4. Do the decisions in Young and Dykes change the burden? ....... 1174

III. CONCLUSION .................................................... 1176

Identical objections warrant identical responses, at least where the Commissioner of Social Security asserts identical *legal* objections to a magistrate judge's recommendations for disposition of these five actions for judicial review of administrative denials of disability benefits. The bone of contention in each case is the magistrate judge's characterization of the Commissioner's burden at step five of the disability analysis. However, the Commissioner does not contest the magistrate judge's conclusion in each case about the outcome of the disability analysis as a whole, even though the magistrate judge's conclusion, in each case, is contrary to the Commissioner's finding of no disability and denial of benefits. Thus, the Commissioner apparently seeks to remedy what he perceives to be a systemic flaw in the disability analysis, while conceding that his disability determination should be reversed in each of these cases. Indeed, the Commissioner has previously pressed a similar point before in this court, albeit unsuccessfully, *see Scott v. Apfel*, 89 F.Supp.2d 1066 (N.D.Iowa 2000), but he now contends that recent decisions of the Eighth Circuit Court of Appeals favor his characterization of his fifth-stage burden over the magistrate judge's.

## I. INTRODUCTION

### A. Background To The Five Cases

These five cases for judicial review of administrative denial of disability benefits under the Social Security Act have not been, and are not now, consolidated in any way. Rather, the court has found it convenient to address the Commissioner's identical or nearly identical objections in each of these cases in a single ruling. Thus, these five cases retain their separate identities.

In *McPherson v. Apfel*, No. C 99–3049–MWB (N.D.Iowa), plaintiff Arlan E. McPherson seeks review of denial of his application for Title XVI supplemental security income (SSI) and Title II disability insurance (DI) benefits for a disability beginning on November 25, 1989. McPherson asserts that he has a disability caused by chronic pain in his back, shoulders, and neck, and radiating into his legs, as well as numbness and grip problems with his fingers, headaches, poor concentration, and depression. The administrative law judge (ALJ) determined that McPherson was not disabled, because he has the residual functional capacity to perform a significant number of jobs that are present in the regional and national economies. However, in a Report and Recommendation filed on August 10, 2000, Magistrate Judge Paul A. Zoss concluded that the Commissioner has failed to meet his burden of proving that McPherson could perform substantial gainful activity despite his impairments. Judge Zoss instead found that the record is clear that McPherson was disabled during the period for which he seeks benefits. Therefore, Judge Zoss recommended that the ALJ's decision be reversed and remanded to the Commissioner for the purpose of calculating and awarding benefits.

In *Flugum v. Apfel*, No. C 99–3056–MWB (N.D.Iowa), plaintiff Stephen C. Flugum seeks review of denial of his application for SSI and DI benefits for a disability beginning on December 31, 1991. Flugum contends that he has a disability caused by mental health problems that, among other things, involve suicidal tendencies and make it difficult for him to deal with people. The ALJ concluded that Flugum's statements concerning his impairments and their impact on his ability to work were not credible. Therefore, the ALJ concluded that Flugum was capable of performing "medium work" in jobs available in significant numbers in the economy, and thus was not disabled. However, in his Report and Recommendation, filed on August 14, 2000, and amended on August 16, 2000, Judge Zoss found that the ALJ disregarded the conclusions of a consulting psychologist and Flugum's supporting testimony without any reason-

able basis, simply substituting her judgment for the judgment of the psychologist and ignoring evidence that Flugum has been unable to maintain personal relationships. Judge Zoss concluded that Flugum has suffered from a disability, since December 31, 1991, that is caused by mental problems, which prevent him from accepting instructions and responding appropriately to criticism from supervisors, and thus Flugum is entitled to benefits beginning on December 31, 1991. Judge Zoss therefore recommended that judgment be entered in favor of Flugum and against the Commissioner.

In *Hall v. Apfel,* No. C 99–3057–MWB (N.D.Iowa), plaintiff Terry L. Hall seeks review of denial of his application for SSI and DI benefits for a disability beginning on September 6, 1995. Hall contends that he has a disability caused by mental health problems, mood disorders, and chronic obstructive pulmonary disease. The ALJ concluded that Hall's statements concerning his impairments and their impact on his ability to work and statements by Hall's witness, his therapist, were not credible. The ALJ concluded further that Hall does not have an impairment or combination of impairments specifically meeting or equaling the criteria of any impairment listed in the Social Security regulations, that Hall is able to perform the work-related activities of his past relevant work, and that Hall retains the residual functional capacity to perform a full range of medium work. Therefore, the ALJ concluded that Hall is not under a disability as defined in the Social Security Act. However, in his Report and Recommendation, filed on August 23, 2000, Judge Zoss found various records of mental health treatment were missing from the record rendering the record incomplete for purposes of justifying the ALJ's decision. Therefore, Judge Zoss concluded that the ALJ failed to develop the record properly to allow a fully-informed decision in this case. Judge Zoss recommended that this case be remanded to the Commissioner with instructions to obtain the missing medical records, resolve the conflicting evidence, with a consultative examination if necessary, and reconsider Hall's disability claim based on the complete record.

In *Nolte n/k/a Castellaw v. Apfel,* No. C 99–3058–MWB (N.D.Iowa), plaintiff Leica Castellaw seeks review of denial of her application for DI benefits for a disability beginning on March 4, 1996. Castellaw asserts that her disability is caused by a number of ailments, including asthma, irritable bowel syndrome, high blood pressure, and problems with her shoulders, neck, back, and knees. However, the ALJ found Castellaw "less than fully credible." He found that Castellaw could perform a significant number of sedentary jobs that exist in the national economy, and therefore concluded that Castellaw was not under a disability as defined in the Social Security Act. However, in a Report and Recommendation filed on August 15, 2000, and amended on August 16, 2000, Judge Zoss concluded that the ALJ had failed to provide a reasoned analysis of his failure to credit some of Castellaw's testimony about the impact of her impairments. Instead, Judge Zoss found that the ALJ had discredited Castellaw's testimony solely on the basis that Castellaw had not sought regular medical treatment for her complaints of colon pain and irritable bowel syndrome. Judge Zoss found that the ALJ's decision does not reveal that Castellaw's credibility was evaluated according to the *Polaski* factors. Thus, Judge Zoss concluded that the ALJ's determination that Castellaw retains the residual functional capacity to work is not supported by the record and the ALJ improperly discounted Castellaw's testimony. Judge Zoss instead concluded that the record establishes that Castellaw has suffered from a disability since March 4, 1996, and that she is entitled to benefits beginning on that date. Therefore, Judge Zoss recommended that judgment be entered in favor of Castellaw and against the Commissioner.

In the fifth case now before the court on the Commissioner's objections to a Report and Recommendation, *Hughes v. Apfel,* No. C 99–4059–MWB (N.D.Iowa), plaintiff Robyn L. Hughes seeks review of denial of her application for SSI benefits for a disability beginning on December 1, 1995. Hughes contends that she has a disability caused by fibromyalgia, in particular relating to pain in her neck, lower back, and all four extremities, as well as headaches. The ALJ found that Hughes's severe impairments were not attended with the specific clinical signs and diagnostic findings required to meet or equal the requirements set forth in the Social Security Regulations and that there was no medical evidence indicating any of Hughes's impairments met the requirements of the Regulations. Although the ALJ concluded that Hughes could not return to her past relevant work, he concluded that she retained the residual functional capacity to perform sedentary and light jobs with certain limitations, in large part, because the ALJ found that Hughes's statements regarding her impairments and their impact on her ability to work were not entirely credible in light of the medical records and reports of treating and examining physicians. Thus, the ALJ concluded that Hughes was not disabled within the meaning of the Social Security Act. However, in a Report and Recommendation filed on August 18, 2000, Judge Zoss concluded that the ALJ based his credibility determinations on his flawed analysis of the first *Polaski* factor, the claimant's daily activities, and having done so, had then failed to evaluate Hughes's subjective complaints in light of the remaining *Polaski* factors. Contrary to the ALJ's conclusions, Judge Zoss found that the record as a whole supports Hughes's subjective complaints about her pain and the limitations it imposes upon her and that the ALJ did not properly evaluate Hughes's credibility. Moreover, Judge Zoss concluded that the evidence in the record as a whole provided substantial evidence that Hughes is disabled and that the Commissioner had failed to meet his bur-den of proving that Hughes can perform substantial gainful activity despite her impairments. Judge Zoss therefore recommended that the court reverse the ALJ's decision and remand this case to the Commissioner for an award of benefits in an appropriate amount.

### B. The Commissioner's Objections

In *McPherson* and *Flugum,* the Commissioner's objections, in their entirety, consist of the following:

Defendant objects to that portion of the Magistrate Judge's Report and Recommendation wherein he states that, at step five of the sequential evaluation process, the Commissioner has a two-prong burden to prove, first, that the claimant has the residual functional capacity ("RFC") to do other kinds of work, and second, that other work exists in significant numbers in the national economy that the claimant can perform. [Citations to pages of the pertinent Report and Recommendation omitted.] In the recent case of *Young v. Apfel,* 221 F.3d 1065, 1069 n. 5 (8th Cir.2000), the Eighth Circuit, citing to 20 C.F.R. §§ 404.1520, 404.1545–46, 404.1560.61; *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); and *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir.1995), reiterated that RFC is determined at step four, where the burden of proof rests with the claimant. Citing to *Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir.1995), the court further stated that, at step five, the burden of production shifted to the Commissioner to produce evidence of jobs that the claimant could perform, but that the burden of persuasion to prove disability always remains with the claimant. *Id.*

Based on the foregoing, Defendant respectfully requests that the Magistrate Judge amend his Report and Recommendation accordingly.

In *Hall, Nolte n/k/a Castellaw,* and *Hughes,* the Commissioner expanded upon this objection somewhat. Thus, the Com-

missioner's objections in these three cases begin as follows:

Defendant objects to the Magistrate's discussion at [page citations omitted] of the report and recommendation which discusses the Commissioner's burden of proof at step five of the sequential evaluation process. The Magistrate's report states:

In our circuit it is well settled law that once a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and second that other work exists in substantial numbers in the national economy that the claimant is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir.1982) (*en banc*); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir.1983).

The language, standing alone, is misleading and confusing because it implies that residual functional capacity (RFC) is formulated at step five and that the Commissioner literally has the burden of proving RFC at that step. Two recent decisions from the Eighth Circuit Court of Appeals make very clear that neither proposition is correct.

The Commissioner's objections in *Hall*, *Nolte n/k/a Castellaw*, and *Hughes* continue with essentially the same discussion of the *Young* decision found in the Commissioner's objections in *McPherson* and *Flugum*. The Commissioner's objections in *Hall*, *Nolte n/k/a Castellaw*, and *Hughes* then add discussion of another recent decision of the Eighth Circuit Court of Appeals:

In *Cynthia Dykes v. Apfel*, No. 99–3916 (8th Cir. August 21, 2000) (per curiam), the court specifically rejected the plaintiff's argument that the Commissioner must prove RFC by medical evidence because the regulations made clear that RFC is formulated based upon all the evidence of record. Relying on *Anderson*, 51 F.3d at 779, the court

also stated that it agreed with plaintiff to the extent that the record must contain some medical evidence that supports the RFC. That analysis is consistent with the Commissioner's policy that RFC is a medical assessment that requires a consideration of all the relevant, credible evidence of record, including the claimant's subjective complaints, activities of daily living, treatment history, and physician opinions as well as objective evidence. 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling 96–8p at pp. 8–9, 61 Fed.Reg. 34,474 (1996).

Although the RFC is formulated at step four of the sequential evaluation process, it remains a critical issue for a court reviewing a step five decision. The court must necessarily review the underlying RFC to determine whether or not the vocational determination made at step five is supported by substantial evidence. This does not mean that the Commissioner bears the burden of proving RFC at step five.

The Commissioner's objections in *Hall* differ from his objections in *Nolte n/k/a Castellaw* and *Hughes* only in the inclusion in *Hall* of a footnote to which the court will return in due course. As with the objections in *McPherson* and *Flugum*, the Commissioner's objections in *Hall*, *Nolte n/k/a Castellaw*, and *Hughes* conclude with a prayer that the Magistrate Judge's Report and Recommendation in each case be revised to clarify the Commissioner's burden at step five consistent with these precedents.

## II. LEGAL ANALYSIS

### A. Review Of A Report And Recommendation

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may

accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.) (citing 28 U.S.C. § 636(b)(1)), *cert. denied,* 519 U.S. 860, 117 S.Ct. 164, 136 L.Ed.2d 107 (1996); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)); *Hudson v. Gammon,* 46 F.3d 785, 786 (8th Cir. 1995) (also citing *Belk*). Because objections have been filed in each of these cases, the court must conduct a *de novo* review.

However, the plain language of the statute governing review provides only for *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). Therefore, the court concludes that it must make a *de novo* review only of matters raised in the Commissioner's objections. As noted above, in each case, the Commissioner makes nearly identical objections only to Judge Zoss's characterization of the Commissioner's burden at step five of the disability analysis, not to Judge Zoss's conclusions that the ALJ's denial of benefits should be overturned.

Although a court's *de novo* review of an ALJ's denial of Social Security disability benefits ordinarily involves a determination of whether there is "substantial evidence" supporting the ALJ's decision,[1] that is not the appropriate review here. The court has made the *de novo* review required by 28 U.S.C. § 636(b)(1) and Eighth Circuit precedent by examining the record before Judge Zoss in each case in light of the Commissioner's objections to Judge Zoss's Report and Recommendation, which involve the important *legal* question of the Commissioner's burden at the fifth stage of the disability analysis. *See, e.g., Swenson v. Management Recruiters Int'l, Inc.,* 872 F.2d 264, 267 (8th Cir.) (identifying as "questions of law," which arbitrators may be ill-equipped to handle, "the proper burden of proof or the appropriate legal standard to apply."), *cert. denied,* 493 U.S. 848, 110 S.Ct. 143, 107 L.Ed.2d 102 (1989); *accord Trull v. Volkswagen of America, Inc.,* 187 F.3d 88, 93 (1st Cir.1999) ("[T]he legal determination of the appropriate burden of proof ... is a question of law[.]"); *In re G.G.M., P.C.,* 165 F.3d 1026, 1030 (5th Cir.1999) ("[B]urden of proof questions are ones of law[.]").

### B. The Commissioner's Burden At Step Five

#### 1. Burden of "proof" or "production"?

■ Putting aside, for the moment, the specific nature of the Commissioner's bur-

---

1. For example, in *Young v. Apfel,* 221 F.3d 1065 (8th Cir.2000), on which the Commissioner relies for other propositions, the Eighth Circuit Court of Appeals characterized the court's role in reviewing administrative disability determinations under the Social Security Act as follows:

 Our role on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *See Prosch v. Apfel,* 201 F.3d 1010, 1012 (8th Cir.2000). Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion. *See Craig v. Apfel,* 212 F.3d 433, 435 (8th Cir.2000). In determining whether existing evidence is substantial, we con-

 sider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *See Prosch,* 201 F.3d at 1012. We may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome. *See id.* Rather, if, after reviewing the record, we find that " 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, we must affirm the decision' " of the Commissioner. *Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir.1995) (quoting *Robinson v. Sullivan,* 956 F.2d 836, 838 (8th Cir.1992)).

 *Young,* 221 F.3d at 1066.

den at step five of the disability analysis, the first question raised by the Commissioner's objections is whether that burden is one of "production," as he asserts, or is instead a burden of "proof," as Judge Zoss stated in each case. *See McPherson,* Report and Recommendation at 21–22; *Flugum,* Amended and Substituted Report and Recommendation at 10–11; *Hall,* Report and Recommendation at 26–27; *Nolte n/k/a Castellaw,* Amended and Substituted Report and Recommendation at 12–13; *Hughes,* Report and Recommendation at 21–22. For the characterization of the Commissioner's burden as a burden of "production," the Commissioner relies on *Young,* 221 F.3d at 1069 n. 5, which in turn relies on *Roth v. Shalala,* 45 F.3d 279, 282 (8th Cir.1995). In characterizing the Commissioner's burden as one of "proof," Judge Zoss relied on *Kelley v. Callahan,* 133 F.3d 583, 587–88 (8th Cir.1998), and *Nevland v. Apfel,* 204 F.3d 853, 857 (8th Cir.2000).

Decisions of the Eighth Circuit Court of Appeals describing the Commissioner's burden at step five of the disability determination process as one of "proof" are legion and include, to cite only some of the most recent ones, the following: *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir.2000) (decision on rehearing of 217 F.3d 586 (8th Cir.2000)); *Cunningham v. Apfel,* 222 F.3d 496, 500 (8th Cir.2000); *Roberts v. Apfel,* 222 F.3d 466, 470 (8th Cir.2000); *Shaw ·v. Apfel,* 220 F.3d 937, 938 (8th Cir.2000); *Nevland v. Apfel,* 204 F.3d 853, 857 (8th Cir.2000); *Bladow v. Apfel,* 205 F.3d 356, 359 & n. 5 (8th Cir.2000); *Hutton v. Apfel,* 175 F.3d 651, 655 (8th Cir.1999); *Haggard v. Apfel,* 175 F.3d 591, 595 (8th Cir.1999); *Cox v. Apfel,* 160 F.3d 1203, 1206 (8th Cir.1998); *Kerns v. Apfel,* 160 F.3d 464, 466 & n. 6 (8th Cir.1998); *Baker v. Apfel,* 159 F.3d 1140, 1144 (8th Cir.1998); *Smith v. Apfel,* 157 F.3d 571, 572 (8th Cir.1998); *Beckley v. Apfel,* 152 F.3d 1056, 1059 (8th Cir.1998); *Fenton v. Apfel,* 149 F.3d 907, 910 (8th Cir.1998); *Fines v. Apfel,* 149 F.3d 893, 895 (8th Cir.1998); *Wilcutts v.*

*Apfel,* 143 F.3d 1134, 1137 (8th Cir.1998); *Kelley v. Callahan,* 133 F.3d 583, 587–88 (8th Cir.1998). Decisions of the Eighth Circuit Court of Appeals describing the burden as one of "production," on the other hand, are so rare that the court has unearthed none besides *Young,* 221 F.3d at 1070 n. 5, and the case upon which *Young* relies, *Roth,* 45 F.3d at 282. *But see Ellison v. Sullivan,* 921 F.2d 816, 821–22 (8th Cir.1990) (describing the burden in the first instance as a burden of "proof," but finding that, on remand, " The Secretary must satisfy the burden of *producing* evidence that there are other jobs in the local economy that Ellison can perform, given his residual functional capacity and the nontransferability of his skills.") (emphasis added).

Moreover, the Commissioner and the decision in *Young* both rely on the Supreme Court's decision in *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), for the correct statement of the requirements of step five, but the pertinent part of *Yuckert* states the following:

> [T]he Secretary bears the burden of *proof* at step five, which determines whether the claimant is able to perform work available in the national economy. But the Secretary is required to bear this burden only if the sequential evaluation process proceeds to the fifth step.

*Yuckert,* 482 U.S. at 146 n. 5, 107 S.Ct. 2287 (emphasis added). Thus, there can be no doubt that Judge Zoss correctly stated that, under precedent of this circuit and the Supreme Court, it is indeed "well settled" that the Commissioner's burden at step five of the disability determination process is a burden of "proof," not merely one of "production."

### 2. *Nature of the burden*

■ What then must the Commissioner "prove"? Again, the specific language that the Commissioner finds objectionable in

Judge Zoss's Reports and Recommendations in these cases is the following:

> In our circuit it is well settled law that once a claimant demonstrates that he or she is unable to do past relevant work, the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and second that other work exists in substantial numbers in the national economy that the claimant is able to do. *McCoy v. Schweiker*, 683 F.2d 1138, 1146–47 (8th Cir.1982) (*en banc*); *O'Leary v. Schweiker*, 710 F.2d 1334, 1338 (8th Cir. 1983).

*See McPherson*, Commissioner's Objection; *id.*, Report and Recommendation at 21; *Flugum*, Commissioner's Objection; *id.*, Amended and Substituted Report and Recommendation at 11; *Hall*, Report and Recommendation at 27; *Nolte n/k/a Castellaw*, Commissioner's Objection; *id.*, Amended and Substituted Report and Recommendation at 12–13; *Hughes*, Commissioner's Objection; *id.*, Report and Recommendation at 22.

### a. The Commissioner's failure to acknowledge controlling authority

Although the Commissioner's quotation in his objections of the language used in Judge Zoss's Reports and Recommendations in *Hall*, *Nolte n/k/a Castellaw*, and *Hughes* includes the internal citations to the *McCoy* and *O'Leary* decisions of the Eighth Circuit Court of Appeals, the Commissioner's quotations fail to include Judge Zoss's own citation to the decision from which Judge Zoss *quoted* this language, *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir.2000), and nowhere in any of his objections in these cases does the Commissioner cite the *Nevland* decision. This is not the first time the Commissioner's objections have ignored the authority on which the magistrate judge relied.

In *Scott v. Apfel*, 89 F.Supp.2d 1066 (N.D.Iowa 2000), this court chided the Commissioner (and hence his counsel) for failing to acknowledge the authority on which Judge Zoss relied for his characterization of the Commissioner's burden at step five of the disability analysis as including the "burden to establish a claimant's [residual functional capacity] by medical evidence," *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir.1998). *See Scott*, 89 F.Supp.2d at 1073. This court commented, "Oddly enough, in objecting to Judge Zoss's characterization of the Commissioner's burden, the Commissioner does not examine the decision on which Judge Zoss specifically relied." *Id.* This court therefore began its analysis of whether Judge Zoss had properly characterized the Commissioner's burden in *Scott* with the case upon which Judge Zoss relied. *Id.* Apparently, such a gentle rebuke made no impact on the manner in which the Commissioner's counsel treats precedent of the Eighth Circuit Court of Appeals, because the Commissioner's counsel has once again failed to acknowledge, *or even cite to*, the decision from which Judge Zoss *quoted* in characterizing the Commissioner's burden at step five in these five cases.[2]

---

2. A similar failing can be found in the footnote in the Commissioner's objections in *Hall*, which states the following:

> The Report and Recommendation suggests that the burden should shift to the Commissioner at step four, not step five, quoting dicta from Judge Bennett's decision in *Scott v. Apfel*, 89 F.Supp.2d 1066 (N.D.Iowa). *See* Rep. & Rec. at 27 n.17. It is also well settled that the burden of production shifts at step five, not step four, to the Commissioner. [Citations omitted.] In *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir.1998)

and *Cline v. Sullivan*, 939 F.2d 560, 566 (8th Cir.1991), cited by the court in *Scott*, the Eight Circuit appears to say that, when a claimant has continued to work, the Commissioner may not find that the claimant has not met his or her burden at step four and fail to shift the burden of production to the Commissioner at step five, if the claimant has continued to work because of a "lenient employer, a high tolerance for pain, or no other means of support[.]" In *Kelley* and *Cline*, the Eighth Circuit does

Chiding must therefore give way to chastisement. Failure to acknowledge *controlling* authority of the Eighth Circuit Court of Appeals, even in—perhaps especially in—a quest to overturn or modify that precedent is *not* "zealous advocacy," nor is it merely intellectual dishonesty; it is instead a failure to satisfy the minimum ethical standards for attorneys in this state. *See* IOWA CODE OF PROFESSIONAL RESPONSIBILITY FOR LAWYERS, Canon 7 ("A lawyer should represent a client zealously within the bounds of the law."); *id.*, EC 7–23 ("Where a lawyer knows of legal authority in the controlling jurisdiction directly adverse to the position of a client, the lawyer should inform the tribunal of its existence unless an adversary has done so; but, having made such disclosure, the lawyer may challenge its soundness in whole or in part."); *id.*, DR 7–105(B)(1) ("In presenting a matter to a tribunal, a lawyer shall disclose ... [l]egal authority in the controlling jurisdiction known to be directly adverse to the position of a client and which is not disclosed by opposing counsel."); *Iowa Sup.Ct. Bd. of Professional Ethics & Conduct v. Ronwin*, 557 N.W.2d 515, 518 (Iowa) ("We adopted the Profes-

---

not appear to be stating that the Commissioner has the burden at step four.

*Hall*, Commissioner's Objections at 2 n.1. This statement contains a multitude of misrepresentations of Judge Zoss's Report and Recommendation, this court's decision in *Scott*, and Eighth Circuit authority, and again ignores authority on which this court relied in *Scott*, adding the peculiar assertion that this court relied on a decision that it did not.

Contrary to the Commissioner's assertions, Judge Zoss did not "sugges[t] that the burden should shift to the Commissioner at step four." Rather, Judge Zoss simply noted this court's comment in *Scott*, 89 F.Supp.2d at 1072 n. 2, that certain decisions of the Eighth Circuit Court of Appeals suggest that the burden shifts to the Commissioner at step *four*, and this court's comment that shifting the burden at this step "makes sense." Judge Zoss did not adopt or rely on such a suggestion, nor did this court in *Scott*. Moreover, the Commissioner asserts that, in *Scott*, the undersigned cited *Cline v. Sullivan*, 939 F.2d 560, 566 (8th Cir.1991), as a decision suggesting that the burden shifts to the Commissioner at step four. However, in *Scott*, this court never discussed *Cline* at all, let alone relied upon it for any suggestion that the burden shifts to the Commissioner at step four. *See Scott*, 89 F.Supp.2d at 1072 n. 2. Instead, in *Scott*, the *Cline* decision is referred to only in a quotation from another decision of the Eighth Circuit Court of Appeals. *See Scott*, 89 F.Supp.2d at 1074–75 (*Cline* is cited in a quotation from *Beckley v. Apfel*, 152 F.3d 1056, 1059–60 (8th Cir.1998)). While attributing to this court in *Scott* reliance on a decision to which the court made no reference in the pertinent part of the decision, the Commissioner once again ignores authority on which the undersigned actually *did* rely, *Baker v. Apfel*, 159 F.3d 1140, 1144 (8th Cir. 1998). *See Scott*, 89 F.Supp.2d at 1072 n. 2 (citing *Baker* as an example of a case in which the Eighth Circuit Court of Appeals appeared to shift the burden to the Commissioner at step *four*). Furthermore, the Commissioner's assertion that the *Kelley* decision "does not appear to be stating the Commissioner has the burden at step four" is not supported by *Kelley* itself. As this court noted in *Scott*, because the ALJ determined in *Kelley* that the claimant could perform her past relevant work, the inquiry in *Kelley* never got to the fifth step of the disability analysis. *See Scott*, 89 F.Supp.2d at·1072 n. 2 (citing *Kelley*, 133 F.3d at 588, which states, "With those restrictions, the ALJ found that Kelley could return to her former work, noting that her past relevant work did not require the performance of any activities precluded by the limitations"). Nevertheless, the Eighth Circuit Court of Appeals commented that " '[t]he presumption that a claimant is not disabled merely because the claimant had a lenient employer, a high tolerance for pain, or no other means of support would unfairly shift the burden of proof back onto the claimant at a point in the proceedings when the burden rightfully belongs on the Commissioner.' " *Scott*, 89 F.Supp.2d at 1072 n. 2 (quoting *Kelley*, 133 F.3d at 588). Thus, *Kelley* plainly placed the burden on the Commissioner at the point at which the ALJ determined that the claimant was still performing past relevant work, *i.e.*, at step *four*. Finally, although this court commented in *Scott* that certain decisions of the Eighth Circuit Court of Appeals appeared to shift the burden to the Commissioner at step four, this court also recognized that "the Eighth Circuit Court of Appeals has most often described the burden as shifting to the Commissioner only at the fifth step of the analysis," and specifically stated that "the question of burden shifting to the Commissioner arises in this case only at the fifth step in the analysis." *Scott*, 89 F.Supp.2d at 1072 n. 2.

sional Code in 1958. Under its provisions, the disciplinary rules are mandatory in character and state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action. (Preliminary statement of the Professional Code.)"), *cert. denied*, 520 U.S. 1241, 117 S.Ct. 1845, 137 L.Ed.2d 1049 (1997). The court questions whether these minimum standards have been satisfied where the Commissioner's objections fail to acknowledge the authority upon which Judge Zoss specifically relied, and fail to acknowledge other authority contrary to the Commissioner's arguments, including the mass of authority identified above defining the Commissioner's burden at step five as a burden of "proof." In the future, the Commissioner's counsel would be well advised to acknowledge directly adverse authority of this district, the Eighth Circuit Court of Appeals, and the Supreme Court, even if—indeed, especially if—he intends to argue that authority is wrong, misleading, or confusing. Moreover, in arguing that such decisions are wrong, misleading, or confusing, the Commissioner's counsel would be well advised to exercise greater care not to misrepresent those decisions.

### b. The controlling authority

Despite the Commissioner's counsel's "sleight of hand" treatment of adverse authority, this court is aware of the specific authority on which Judge Zoss relied in his characterization of the Commissioner's burden at step five of the disability analysis.[3] Because Judge Zoss in fact quoted the challenged language from *Nevland*, 204 F.3d at 857, a decision of the Eighth Circuit Court of Appeals, this court cannot find that Judge Zoss in any way committed legal error in stating such a standard.

Furthermore, a number of decisions handed down since *Nevland* was decided confirm *Nevland*'s statement of the Com-

missioner's burden at step five of the sequential disability analysis. In *Singh v. Apfel*, 222 F.3d 451 (8th Cir.2000), the Eighth Circuit Court of Appeals specifically relied on *Nevland* for the statement of the Commissioner's burden:

> If the Commissioner finds that the claimant does not meet the Listings but is nevertheless unable to perform his or her past work, the burden of proof shifts to the Commissioner to prove, first, that the claimant retains the residual functional capacity to perform other kinds of work, and, second, that other such work exists in substantial numbers in the national economy. *See Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir.2000). A claimant's residual functional capacity is a medical question. *See id.* at 858.

*Singh*, 222 F.3d at 451. Moreover, the court in *Singh* concluded that, "[h]aving found that the Commissioner has not met his burden of proving that Singh can perform other jobs in the national economy, we reverse the judgment of the district court affirming the Commissioner's decision." *Id.* at 452. Finding further that the evidence supported a finding of disability, the court remanded to the district court to remand to the Commissioner for an award of benefits. *Id.; see also Cunningham v. Apfel*, 222 F.3d 496, 500 (8th Cir.2000) (also stating the Commissioner's burden with citation to *Nevland*); *Shaw v. Apfel*, 220 F.3d 937, 938 (8th Cir.2000) (finding that the ALJ had properly recognized the Commissioner's burden, as stated in *Nevland*, but citing *McCoy v. Schweiker*, 683 F.2d 1138 (8th Cir.1982) (*en banc*), one of the decisions on which *Nevland* relied). In *Roberts v. Apfel*, 222 F.3d 466 (8th Cir.2000), the Eighth Circuit Court of Appeals recognized one exception to reversal

---

**3.** Indeed, so was the Commissioner's counsel, because the court cited *Nevland* in *Scott*, 89 F.Supp.2d at 1072–73, a case that the Com-

missioner strenuously contested—even after this court accepted Judge Zoss's Report and Recommendation—but did not appeal.

where the Commissioner fails to acknowledge this burden-shifting requirement:

> We will reverse where the ALJ fails to acknowledge the shift in burden to the Commissioner in determining if the claimant can perform a significant number of jobs in the national economy except in those cases in which the evidence is so strongly against the claimant that "the outcome is clear regardless of who bears the burden of proof." *Butler v. Secretary of Health & Human Servs.*, 850 F.2d 425, 426 (8th Cir.1988); *see Pope v. Bowen*, 886 F.2d 1038, 1040 (8th Cir.1989).

*Roberts*, 222 F.3d at 470. That exceptional situation does not obtain in any of these five cases.

In light of these precedents—which reiterate the language of *Nevland*—Judge Zoss's Reports and Recommendations in these cases—which quote *Nevland*—properly state the Commissioner's burden at step five of the sequential disability analysis.

### 3. Is the statement of the Commissioner's burden in Nevland "misleading" and "confusing"?

The Commissioner contends, however, that the statement of the Commissioner's burden in *Nevland* is "misleading and confusing because it implies that residual functional capacity (RFC) is formulated at step five and that the Commissioner literally has the burden of proving RFC at that step," when residual functional capacity is in fact determined at step four of the analysis. The court does not agree. The error of the Commissioner's assertion is apparent when the description of the *Commissioner's* burden in *Nevland* is read in its entirety and compared with the *claimant's* burden at step four of the sequential analysis.

As the Eighth Circuit Court of Appeals recently explained, at *step four*, "the Commissioner ... considers the claimant's residual functional capacity and the physical and mental demands of the claimant's past work and determines whether the claimant can still perform that work." *Cunningham*, 222 F.3d at 500 (citing 20 C.F.R. § 416.920(e)); *Bladow v. Apfel*, 205 F.3d 356, 359 n. 5 (8th Cir.2000) (stating step four as, "If [the claimant's impairment is not equivalent to a listed impairment], is the claimant precluded from performing his previous work because of his impairment?");[4] *Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir.1998) (stating the fourth step

---

4. The court in *Bladow* stated the five steps of the disability analysis as follows:

> The five steps in determining whether a claimant is disabled for purposes of receiving disability benefits are: (1) Is the claimant engaged in substantial gainful activity? (2) If not, does the claimant have a medically severe impairment or combination of impairments? (3) If so, is the impairment equivalent to one of a number of listed impairments found at 20 C.F.R. pt. 404, subpt. P, App. 1? (4) If not, is the claimant precluded from performing his previous work because of his impairment? (5) If so, does the claimant's impairment prevent him from performing other work in the national economy given his age, education, and work experience? If the impairment precludes him from performing other work, the claimant is entitled to benefits. *Bowen v. Yuckert*, 482 U.S. 137, 140–42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). At step five of the disability inquiry, the burden of proof shifts to the Commissioner. *Kerns v. Apfel*, 160 F.3d 464, 466 (8th Cir.1998).

*Bladow*, 205 F.3d at 359 n. 6. Similarly, in *Cox v. Apfel*, 160 F.3d 1203 (8th Cir.1998), the Eighth Circuit Court of Appeals summarized the five-step disability evaluation process as follows:

> [The Commissioner] determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment—one that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform. *See Kelley v. Callahan*, 133 F.3d 583, 587–88 (8th Cir.1998).

in the analysis as "whether the claimant has the residual functional capacity to perform his or her past relevant work"); *Kerns v. Apfel,* 160 F.3d 464, 466 n. 6 (8th Cir.1998) (same summary, citing *Fines v. Apfel,* 149 F.3d 893, 895 (8th Cir.1998), and 20 C.F.R. § 404.1520); *Baker v. Apfel,* 159 F.3d 1140, 1143–44 (8th Cir.1998) (same summary, citing *Kelley, infra* ); *Fenton v. Apfel,* 149 F.3d 907, 910 (8th Cir.1998); *Kelley v. Callahan,* 133 F.3d 583, 587–88 (8th Cir.1998). Thus, there is no doubt that residual functional capacity is determined at step four. Nor did Judge Zoss suggest otherwise by quoting *Nevland* for the Commissioner's burden at step *five,* because, in each of the cases now before this court, Judge Zoss stated that the fourth step requires proof of the claimant's residual functional capacity to perform past work.

Nor does the statement of the burden at step five in *Nevland* suggest that residual functional capacity is determined anew at step five. The decision in *Nevland* states that, at step *five,* "the burden shifts to the Commissioner to prove, first that the claimant *retains* the residual functional capacity *to do other kinds of work.*" *Nevland,* 204 F.3d at 857 (emphasis added). Thus, what this statement of the burden requires is that the Commissioner prove that, with the residual functional capacity determined at step four (where it was compared with the claimant's past work), the claimant "retains" the residual functional capacity to perform *other* jobs. *See id.* The second prong of the Commissioner's burden at step five, as stated in *Nevland,* then requires the Commissioner to prove that such other jobs—that is, jobs for which the claimant "retains" the residual functional capacity—do in fact exist in the national economy. *See id.* In other words, "in the last step, the Commissioner has the burden to establish that jobs real-istically suited to the claimant's residual functional capabilities are available in the national economy." *Cox,* 160 F.3d at 1207 (citing *Talbott v. Bowen,* 821 F.2d 511, 514–15 (8th Cir.1987)).

Thus, the statement in *Nevland* of the Commissioner's burden at step five of the analysis is neither misleading nor confusing.

### 4. Do the decisions in Young and Dykes change the burden?

The Commissioner contends that the decisions of the Eighth Circuit Court of Appeals in *Young v. Apfel,* 221 F.3d 1065 (8th Cir.2000), and *Dykes v. Apfel,* 223 F.3d 865 (8th Cir.2000), somehow change the Commissioner's burden or supersede the statement of the Commissioner's burden in *Nevland.* Again, the court does not agree.

The decisions in *Young* and *Dykes* are not in fact contrary to the statement of the Commissioner's burden in *Nevland,* when the language used in *Nevland* is read in its entirety. Although the panel in *Young* "reiterate[d] that RFC is determined at step four, where the burden of proof rests with the claimant," *see Young,* 221 F.3d at 1069 n. 5 n. 5, the statement of the burden at step *five* in *Nevland* is not to the contrary. Again, the language used in *Nevland* neither states nor suggests that residual functional capacity is determined anywhere other than step four. To the extent that the decision in *Young* suggests that only a burden of *production* shifts to the Commissioner at step five, it is *Young,* not *Nevland,* that is out of step not only with Eighth Circuit precedent, but with the Supreme Court's statement of the Commissioner's burden at step five in *Yuckert. See Yuckert,* 482 U.S. at 146 n. 5, 107 S.Ct. 2287 ("[T]he Secretary bears the burden of *proof* at step five, which determines whether the claimant is able to perform work available in the national economy.") (emphasis added).

*Cox,* 160 F.3d at 1206. These statements of the five-step analysis are in keeping with ad-ministrative regulations 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920.

The Commissioner also asserts that, in *Dykes,* the other new decision on which the Commissioner relies, "the court specifically rejected the plaintiff's argument that the Commissioner must prove RFC by medical evidence because the regulations made clear that RFC is formulated based upon all the evidence of record." The Commissioner appears to offer this contention in response to language in the *Nevland* decision that Judge Zoss did *not* quote, and language in *Weiler v. Apfel,* 179 F.3d 1107 (8th Cir.1999), that he *did*.[5] In *Nevland,* the court observed that residual functional capacity "is a medical question.'" *Nevland,* 204 F.3d at 858 (quoting then District Judge Richard S. Arnold, now Circuit Judge, in *Ford v. Secretary of Health and Human Servs.,* 662 F.Supp. 954, 955 (W.D.Ark.1987)). In *Weiler,* the court addressed the claimant's contention that, "at step five it is the Secretary's burden to establish by medical evidence that the claimant has the requisite residual functional capacity to perform other work." *Weiler,* 179 F.3d at 1109. The court stated, "We do not quarrel with Weiler's assertion that the Secretary carries the burden of establishing residual functional capacity by medical evidence." *Id.* The court then considered whether there was sufficient medical evidence in the record to support the ALJ's determination that the claimant could perform other jobs in the national economy. *Id.* at 1110. Finally, the court considered whether there was sufficient evidence to support the ALJ's conclusion that there were a significant number of jobs in the economy that the claimant could perform with that residual functional capacity. *Id.*

The Commissioner suggests that these decisions are contrary to, and hence are superseded by, *Dykes.* In *Dykes,* the pertinent part of the decision is the following:

On appeal, Dykes first argues that the ALJ erred in not requiring, at step five of the sequential disability evaluation process, that the Commissioner prove by objective medical evidence that she has the residual functional capacity to perform other work. *To the extent Dykes is arguing that residual functional capacity may be proved only by medical evidence, we disagree.* The current regulations make clear that residual functional capacity is a determination based upon all the record evidence. See 20 C.F.R. § 404.1545; Soc. Sec. Ruling 96–8p, at pp. 8–9. *We agree with Dykes to this extent—the record must include some medical evidence that supports the ALJ's residual functional capacity finding. See Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir.1995). That requirement is more than satisfied here, both in the treatment histories of Dykes's shoulder condition, and in the fact that at least one of her treating physicians released her to return to light duty work.

*Dykes,* 223 F.3d at 866–67 (emphasis added). This discussion is not contrary to the conclusions of other panels in *Nevland* and *Weiler.*

The decision in *Dykes* concludes, first, that residual functional capacity is not proved exclusively by medical evidence, but neither *Nevland* nor *Weiler* suggests that residual capacity must be proved with such evidence. Rather, *Nevland* states that residual functional capacity is "a medical question," *see Nevland,* 204 F.3d at 858, but does not thereby exclude other "non-medical" evidence from the determination of residual functional capacity. The decision in *Weiler* agreed with the proposition that the Commissioner carries his burden at step five of the analysis with regard to whether the claimant retains the residu-

5. It also appears that the Commissioner is attempting to challenge this court's conclusions in *Scott v. Apfel,* 89 F.Supp.2d at 1066 (N.D.Iowa 2000), a decision in which this court specifically addressed the meaning of the "medical evidence" requirement for the second prong of the Commissioner's burden at step five, rejecting the Commissioner's arguments. *See Scott,* 89 F.Supp.2d at 1073–78. The Commissioner did not appeal this court's decision in *Scott.*

al functional capacity to perform jobs other than his or her past relevant work if the Commissioner establishes the retained residual functional capacity by medical evidence. *Weiler,* 179 F.3d at 1109.

As this court suggested in *Scott,* the key to the "medical evidence" requirement is the decision of the Eighth Circuit Court of Appeals in *Anderson v. Shalala,* 51 F.3d 777 (8th Cir.1995), upon which the *Dykes* decision relies. *See Scott,* 89 F.Supp.2d at 1076. This court explained,

> As a final point on this portion of the Commissioner's burden, the requirement that the Commissioner prove the claimant's residual functional capacity by medical evidence does not mean that the Commissioner must produce additional evidence not aleady within the record. *Anderson,* 51 F.3d at 779. Rather, the question is whether medical evidence already in the record provides a sufficient basis for a decision in favor of the Commissioner. *Id.*

*Scott,* 89 F.Supp.2d at 1076. In *Anderson,* the court concluded that "[i]f there is no such [medical] evidence, the ALJ's decision 'cannot be said to be supported by substantial evidence.' " *Anderson,* 51 F.3d at 779 (quoting *Frankl v. Shalala,* 47 F.3d 935, 937–38 (8th Cir.1995)).

Thus, *Nevland, Weiler, Anderson* and *Dykes* all stand for the same proposition: The Commissioner must prove that the claimant retains the residual functional capacity to perform "other jobs" and the Commissioner cannot meet that burden unless his determination that the claimant retains sufficient residual functional capacity to perform "other jobs" is supported by medical evidence. *See Dykes,* 223 F.3d at 866 (the claimant was correct that the Commissioner must meet his burden at step five with medical evidence of residual functional capacity "to this extent—the record must include some medical evidence that supports the ALJ's residual functional capacity finding"); *Nevland,* 204 F.3d at 858 (residual functional capacity " 'is a medical question' ") (quoting *Ford,* 662

F.Supp. at 955); *Weiler,* 179 F.3d at 1110 (there was sufficient medical evidence to support the ALJ's determination that the claimant retained the residual functional capacity to perform "other jobs"); *Anderson,* 51 F.3d at 779 ("If there is no such [medical] evidence, the ALJ's decision 'cannot be said to be supported by substantial evidence.' ") (quoting *Frankl,* 47 F.3d at 937–38). Consequently, just as *Young* does not require the court to amend Judge Zoss's statement of the Commissioner's burden at step five of the sequential disability analysis, neither does *Dykes.*

## III. CONCLUSION

The Commissioner's objections in each of these cases are without merit. In quoting *Nevland,* Judge Zoss properly stated the burden on the Commissioner at step five of the sequential disability analysis. The statement of the burden in *Nevland* is in accord with both Eighth Circuit and Supreme Court precedent to the extent it shifts a burden of "proof" as opposed to a burden of "production." The statement of the nature of the burden in *Nevland* is also in accord with controlling precedent, and is neither misleading nor confusing when read in its entirety and in comparison to step four of the sequential disability analysis. Nor is the statement of the burden in *Nevland* either contrary to or superseded by the recent decisions in *Young* and *Dykes* upon which the Commissioner relies.

Therefore, in each of these cases, the Commissioner's objections are overruled, and Judge Zoss's Report and Recommendation is accepted. Consequently,

1. In *McPherson v. Apfel,* No. C 99–3049–MWB (N.D.Iowa), the ALJ's decision is reversed and the case is remanded to the Commissioner for the purpose of calculating and awarding benefits.

2. In *Flugum v. Apfel,* No. C 99–3056–MWB (N.D.Iowa), judgment is entered in

favor of Flugum and against the Commissioner.

3. In *Hall v. Apfel,* No. C 99–3057–MWB (N.D.Iowa), the case is remanded to the Commissioner with instructions to obtain the missing medical records, resolve the conflicting evidence, with a consultative examination if necessary, and reconsider Hall's disability claim based on the complete record.

4. In *Nolte n/k/a Castellaw v. Apfel,* No. C 99–3058–MWB (N.D.Iowa), judgment is entered in favor of Castellaw and against the Commissioner.

5. In *Hughes v. Apfel,* No. C 99–4059–MWB (N.D.Iowa), the ALJ's decision is reversed and this case is remanded to the Commissioner for an award of benefits in an appropriate amount.

IT IS SO ORDERED.